FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

§

JUN 1 8 2008  *aew*
Jun 18, 2008
MICHAEL W. DOBBINS
IK, U.S. DISTRICT COURT

MIGUEL BUSTAMANTE,          08CV3508
                           **JUDGE HOLDERMAN**
        Movant,            **MAGISTRATE JUDGE SCHENKIER**

VS.                                   §  Case No. 02-CR-719-18
                                      §  Appeal No. 03-3388
UNITED STATES OF AMERICA,             §
                                      §  Hon. Judge James F.Holderman
        Respondant.                   §

**MEMORANDUM IN SUPPORT OF MOVANT'S MOTION**
**TO VACATE, SET ASIDE, OR CORECT SENTENCE**
**PURSUANT TO 28 U.S.C. §2255**

**COMES NOW**, Miguel Bustamante, the movant, who is acting <u>Pro-Se</u> 1/
and respectfully brings this motion to vacate, setaside, or correct
sentence pursuant to 28 u.s.c. §2255. Movant, who has no legal trai-
ning or legal expertise, brings this motion to the Court as best as
he can. After researching the issues that his previous attorneys
neglected  or plainly ignored to bring before this Honorable Court.

Movant will present before this Court issues that counsels Mr.
Geral J.Collins, Court appointed and Mr.Frederick F.Cohn, retained
failed to investigate and present during pre-trail and before movan-
nts sentencing. These are issues that if investigated and presented
before this Court, could have had an impact in movant's case.

---

1/ Movant prays that this Honorable Court invoke the holdings
set out in <u>Haines V. Kerner</u>, 404 U.S. 519 (1972)(Pro-Se litigant
pleadings are to be construed more liberally and held to less
strigent standards than formal pleadings to state valid claims on
which litigants would prevail, it should do so despite the failure
to cite proper legal authority, confusion of legal theories, poor
syntax and sentence construction an unfamiliarity with pleadings.).

Therefore, as a result, movant begs this Honorable Court to take the pains in protecting him against consequences of errors "if injustice would otherwise result." Martin V. Deuth, 298 F. 3d at 671 (7th Cir. 2002).

## A REVIEW UNDER 28 U.S.C. §2255

The petitioner, pursuant to this Section, is challenging the lawfulness of his conviction and sentence. The Act provides a remedy under such circumstances:

> " A prisoner in custody under sentence of a Court established by Act of Congress and claiming the right to be released upon the ground that the sentence was imposed in violation of the constitution or law of the United States or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack may move the Court which imposed the sentence to Vacate, Set Aside, or correct Sentence Pursuant to 28 U.S.C. § 2255 (1996)."

This Court should determine "whether the claimed error of law was fundamental defect which inherently resulted in a complete miscarriage of justice or whether it represents [ex]ceptional circumstances where a need for remedy afforded by Writ of Habeas is apparent." Casper V. Ryan, 822 F.2d 1283 (3rd. Cir. 1997).

2

## STATEMENT OF JURISDICTION

This Court maintains jurisdiction in the above-captioned matter to decide the motion because it was filed with the clerk's office within the one (1) year statue of limitations as required by by the then passage of the (AEDPA) of 1996. The record will reflect that movant's motion was filed preceeding July 16,2007, date on which the United States Court of Appeals for the Seventh Circuit affirmed, movant's conviction, in accordance with said time limitations.

## STATEMENT OF THE CASE

On October 23,2002, Miguel Bustamante, was arrested along with others, based on a criminal complaint that charged him and others with participating in a conspiracy to possess with intent to distribute narcotics in violation of 21 USC §841(a)(1) and 21 USC §846.

£n November 20,2002, movant along with others was charged by way of indictment to count one conspiracy to possess with intent to distribute cocaine 21 USC §841(a)(1), §846, count Thirteen with possession with intent to distribute cocaine on or about October 23,2002 21USC §841(a)(1), count fourteen possession of a firearm ater having previously suffered a felony conviction 18 USC §922(g)(1), count fifteen using a firearm during relation to a drug trafficking crime 18 USC §924(C)(1)(A).

On May 15,2003, movant withdrew his guilty plea of not guilty and entered a blind plea of guilty to counts 13, 14, 15 and to the forfeiture allegations.

On September 8, 2003, movant was sentenced to <u>63</u> <u>months</u> on each
of the <u>counts</u> <u>13</u> and <u>14</u> to run <u>concurrent</u> with each other; and <u>60</u>
months on <u>count</u> <u>15</u> to run <u>consecutive</u> to the term of imprisonment
on <u>counts</u> <u>13</u> and <u>14</u>.

On November 12, 2003, counsel Mr.Frederick F.Cohn filed an
appeal with the United States Court of Appeals for the Seventh
Cicuit. Due to the Supreme Court's (historic) decision in <u>Blakely</u>/
<u>Booker</u>, movant's direct appeal was delayed and not decided until
<u>July</u> <u>16</u>, <u>2007</u>. Counsel Mr.Frederick F. Cohn did not proceed with
a Writ of Certiorari.

## SUMMARY OF THE FACTUAL BACKGROUND

On October 23, 2002, movant was arrested at his exgirlfriends apartment, located at 1217 Nantucket Drive in Aurora. The FBI S.W.A.T team and local police after securing the area with a show of force gained entry into the apartment.

At the time of the FBI's entry into the apartment the only persons present were the children of movant's exgirlfriend and her sister and movant who was sleeping in the upstairs bedroom. Movant who was asleep, was awaken when he heard excessive and unusual noise coming from the downstairs part of the apartment. Movant heard the voices of older men, which was very unusual being that he knew that the only persons in the apartment and awake would be his exgirlfriends and her sisters children. Because at that time his exgirlfriend and her sister were at work.

The commotion that movant heard caused him to get up from the bed and go to investigate what it was. As movant opened the door to the bedroom, movant could hear that they were yelling out his name and ordering him to come downstairs and with his hands up in the air. Movant who was frightened with all the commotion did as he was ordered to do, and he headed down the stairs. As movant walked down the stairs and came closer to the bottom of the stairs movant could see that there were men wearing all black gear and with rifles, that they were pointing at him. They were also yelling that he was under arrest. Once movant reached the bottom of the stairs, he was quickly placed in handcuffs by the FBI. Movant then asked why was he being arrested for but was told he would find out later.

Movant wearing his underwear only, was than taken to the kitch-
en area and set on a chair. Movant was not shown nor given an arr-
est warrant.

Movant still in handcuffs and guarded by memebers of the FBI
S.W.A.T. team, was then approached by FBI (S.A.Bassett) and (S.A.
Cotigula). Then (S.A.Bassett), without giving movant his Miranda
warnings began to question movant. S.A.Bassett, asked movant if
he (movant) had any guns or drugs in the apartment and that if he
did, to tell him (S.A.Bassett). Movant responded to S.A.Bassett
that he did not have any guns or drugs in the apartment. S.A.
Bassett, again asked movant , that if he had any guns in the house
to tell him because they were going to be searching the apartment
and he did not want any of [his] agents getting hurt while they
searched the apartment. Movant, again responded to S.A.Bassett
that he did not have any guns or drugs in the apartment. S.A.
Bassett, again without giving movant any Miranda warnings, asked
movant if he owned the vehicle that was parked outside behind the
apartment. To which movant, answered that, yes it was his vehicle
parked out in the back.

When S.A.Bassett, stopped questioning movant, movant asked S.A.
Bassett, why was he being arrested but was told that he would find
out later. After this several of the FBI men went upstairs to do
the search as S.A.Bassett had told movant they would be doing. Then
after several minutes they returned back downsatirs. They then
took movant upstairs and into the bedroom so movant could get dres-
sed.

Movant was uncuffed from one hand so he could place his clothes on and also his contact lens, being that because of movant's eye condition (Keracotonous), movant is required to wear contact lenses to see properly. After all this was done movant was taken back downstairs and placed again in the custody of S.A.Bassett and S.A. Cotigula. While movant was being taken by the agents and stood up, S.A.Bassett asked movant for permission to search his vehicle. Movant still unaware of why he had been arrested, nor was he informed that he could refuse to the search of his vehicle, movant acquieced to their request for consent to search. Movant was then taken outside and placed inside the agents vehicle and S.A.Bassett then relayed that movant had consented to the search of the vehicle.

Movant was then transported to the Aurora Police Department (APD). Once arriving at the Auorora police Department (APD), S.A.Bassett and S.A.Cotigul, took movant inside the (APD) building and he was placed in a holding cell. Several minutes later, movant was taken out from the cell and taken to an interrogation room. Movant who still was unaware of why he had been arrested and did not know what was taking place, again asked why had he been arrested for. But instead of giving movant an answer, S.A.Bassett showed and played fro movant to hear a recording and quickly turned the tape-recorder off. S.A.Bassett, then questioned movant that if the voice on the tape were his. Movant answered, that yes it was his voice and that of Juan Corral's. Movant then requested an attorney. S.A. Bassett, _for the first time_, finally appraised movant of his due _Miranda rights_. and movant's right to speak to a lawyer. Movant refusing to waive his Miranda rights and to answer any more questions was taken back to the holding cell.

Movant again was taken out from the cell for the purpose of being processed. i.,e, fingerprinting and for photographing. Once this was completed, S.A.Bassett, came over to where movant was and un-happy because of movant's refusal to waive his Miranda rights and answer any more questions told movant that since movant had gave consent to search that movant needed to sign the consent form. S.A. Bassett holding the form in his hands , threw the form ontop of a counter and ordered movant to sign it. Movant looked at the form and noticed that it was blank, informed S.A.Bassett, that the form was blank but was told that it would be filled out later. Movant was not read the consent to search form, nor informed that he did not have to consent signed the form.

After all this that transpired, movant was again taken by S.A. Bassett and S.A.Cotigula back to their vehicle and headed towards Chicago. Once out in the highway, S.A.Bassett received a phone call on his cellular phone, to which S.A.Bassett answered. After talking on the cellular phone for several minutes, S.A.Bassett asked movant where were the keys to movant's vehicle. Movant responded, that the keys were either on the dresser or in his coat pocket and that his coat was by the bed in the bedroom where he had been sleeping, prior to his arrest. S.A.Bassett, then relayed the answer movant had gave him as to the location of the vehicle keys and the call was terminated. S.A.Bassett, again received another phone call and he then asked movant if his vehicle could be removed from 1217 Nantucket Drive and moved to the Aurora police Department's Gara-ge and movant again acquieced to their request. The agents then arrived at the United States District Court Building, and movant was taken inside by the agents.

8

Movant was then taken before the Honorable Magistrate judge Geraldine Soat Brown, were movant would finally learn the reason of his arrest and informed of the charges. Movant was informed that he was being charged with participating in a conspiracy to distribute and possess with the intent to distribute narcotics in violation of 21 U.S.C. §841(a)(1) and §846. The Court would later be informed that a veichle that movant admitted belonged to him was searched and an amount of cocaine and a handgun were found hidden in the center console of the vehicle and they were all wrapped in a towel.

Movant was appointed counsel Mr.Gerald J.Collins by the Court to represent him in the criminal case. Then on or about may 25, 2003, movant's family retained counsel Mr.Frederick F.Cohn to represent movant, counsel Mr.Frederick F.Cohn, represented movant in the appeal process as well.

## GROUNDS FOR RELIEF

I.    MOVANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AND AS
      A RESULT ENTERED INTO AN UNKNOWING AND INVOLUNTARY GUILTY
      PLEA.

II.   MOVANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN MR.
      GERALD J.COLLINS, COURT APPOINTED AND MR.FREDERICK F.COHN,
      RETAINED FAILED TO FILE A MOTION TO SUPPRESS EVIDENCE
      UNDER MOVANT'S FOURTH AMENDMENT RIGHTS BECAUSE MOVANT'S
      CONSENT TO SEARCH WAS UKNOWING AND INVOLUNTARLY MADE.

III.  MOVANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN MR.
      GERALD J.COLLINS COURT APPOINTED AND MR.FREDERICK F.COHN,
      RETAINED FAILED TO FILE A MOTION TO SUPPRESS STATEMENTS
      MOVANT MADE BEFORE BEING ADVISED OF HIS MIRANDA RIGHTS
      AND ALSO, STATEMENTS MOVANT MADE AFTER BEING MIRANDIZED
      AND HAVING REQUESTED A LAWYER.

IV.   MOVANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN MR.
      FREDERICK F.COHN, RETAINED FAILED TO INVESTIGATE MOVANT'S
      CASE AND AS A RESULT FILED A MOTION TO SUPPRESS STATEMENTS
      AND EVIDENCE AND FILED AN APPEAL THAT HAD NO MERITS.

V.    MOVANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN MR.
      FREDERICK F. COHN, RETAINED FAILED TO OBJECT TO THE DRUG
      QUANTITY AND TO THE RELEVANT CONDUCT BEFORE SENTENCING.

VI.   MOVANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN MR.
      FREDERICK F.COHN, RETAINED FAILED TO FILE A MOTION REQESTING
      A LIMITED REMAND OF MOVANT'S SENTENCE UNDER THE SUPREME
      COURT DECIDED CASES BLAKELY AND BOOKER.

VII.  MOVANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN MR.
      FREDERICK F.COHN, RETAINED FAILED TO FILE A PETITION FOR A
      WRIT OF CERTIORARI IN THE SUPREME COURT.

VIII. MOVANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN MR.
      FREDERICK F. COHN, RETAINED FAILED TO REQUEST A REDUCTION
      FOR MOVANTS ACCEPTANCE OF RESPONSIBILITY §3E1.1 ON COUNT
      FOURTEEN.

IX.   MOVANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN MR.
      FREDERICK F. COHN, DID NOT FILE A MOTION REQUESTING A
      DOWNWARD DEPARTURE BEFORE SENTENCING.

## STANDARD FOR SHOWING INEFFECTIVE ASSISTANCE OF COUNSEL

Where Movant, Miguel Bustamante, raises his grounds for relief based on the ineffective assistance of counsels (1) Mr.Gerald J. Collins, Court appointed and (2) Mr.Frederick F.Cohn, retained, he makes a summary statement of the applicable standard.

The Sixth amendment right to counsel forms the foundation upon which the entire American Criminal Justice System is based. As the Supreme Court has noted, it is by far the most significant of the defendant's constitutional rights because it is by means which the defendant asserts each of his own other rights in a criminal pro-ceeding.  United States V. Cronic, 466 U.S. 658, 652 (1984).

The Courts have been given a two prong analysis for establishing the lack of constitutionally adequate representation of counsel. Strickland V. Washington, 466 U.S. 668, 687 (1984). First, a pet-itioner must establish thatcounsel's performance fell below an objective standard of reasonableness; Second, a petitionermust demonstarte that but for counsel's deficiencies the result of the proceedings would have been different "to a reasonable probability"

> " A reasonable probability is a probability
> sufficient to undermine confidence in the
> outcome of the criminal proceedings."

Strickland, 466 at 694.

Where, as a practical matter, the reviewing District Courts have seemed to gravitate to a higher standard than "reasonable probabi-lity" and automatically deffered to the putative tactical decisions of defense counsel. The supreme Court has acted again to return the evaluation of the true Strickland standard.

Wiggins V. Smith, 156 L.Ed 2d 471 (2003) (Standard remains "reasonable probability" and counsel's decisions cannot be presumed correct absent an articulate reason for the decision).

What a reviewing Court most commonly looks for is the "breakdown in the adversial process that renders the result unreliable." Strickland, 404 U.S. at 667; United States V. Cronic, 466 U.S. at 659. (questions on haheas review are whether defense counsel's representation failed to subject the critical elements of the proceedings).

The standard for prejudice sufficient to be cognizable on a §2255 motion has been defined by the Supreme Court to be the imposition of any "unwarranted term of imprisonment." Glover V. United-States, 531 U.S. 198, 292 (2001). This standard of prejudice is only lately really being used; but it is the correct standard for review of sentencing errors. United States V. Smack, 347 F.3d 533, 541

## ARGUMENTS

I.  **MOVANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AND
AS A RESULT ENTERED INTO AN UNKNOWING AND INVOLUNTARY
GUILTY PLEA.**

Movant, Miguel Bustamante, asserts that he received ineffective
assistance of counsel in violation of the Sixth Amendment of the
United States Consitution at a critical stage of the proceedings.
Movant submits to this Honorable Court that counsels Mr.Gerald J.
Collins, Court appointed and counsel Mr.Frederick F.Cohn, retained
were ineffective in defending him during the process of his crimin-
al case. Movant as a result of counsels ineffectiness entered into
an unknowing and unintelligent guilty plea. Hill V.Lockhart, 474 U.S
52 (1986). A plea of guilty is consititutionalli valid only to the
extent that it is "voluntary" and "intelligent," Brady V. United
States, 397 U.S. 742, 748 (1970).

In the case at bar, movant's conditional plea of guilty to the
charges was predeicated upon the advise of his retained counsel Mr.
Frederick F.Cohn, who believed that he would prevail on direct app-
eal of the denial of movant's suppression motion in the District
Court. Counsel knew that the suppression motion he had filed in the
District Court was meritless and a dead-bang. Counsel's misadvise
induced movant into accepting a conditional plea of gilty in order
to preserve the right to appeal the meritless suppression motion.
Movant upon the advise of counsel that in the Appeals Court he
would provail accpepted the conditional plea of guilty.

Movant took counsel's advise as true that in the Court of Appeals there was a reasonable chance of winning the denial of the supresion motion that had been denied in the District Court. (Exhibit--A) Had it not been for counsel's misadvise and the lack of Mr.Collins, and Mr.Cohn's failure to review movant's discovery material and to properly defend motion through the process, movant would have not accpeted the plea of guilty and insisted on going to trail as he had been all along intended on doing.

Movant submits that neither counsel Mr.Collins, nor Mr.Cohn, did a review of his case file and look for the evidence that could help movant in his case. Counsels did not review the documents that were rpovided by the Goverment and as a result did not file the proper motions to suppress statements that were derived from movant's Fifth Amendment and Sixth Amendment rights. Also evidence that was derived from an involuntary search of movant's vehicle. Counsels further, did not contest the amount of drugs that were atributed to movant. The lack of representation caused movant to believe that he should then plead guilty. Otherwise, movant would have insisted on going to trail had he been properely defended, counsels numerous errors prejudiced movant.

The Supreme Court has held that "a defendant who pleads guilty upon the advise of counsel" may only attack the voluntary and the intelligent character of the guilty plea by showing that the advise he received "was constitutionally ineffective. <u>Hill V. Lockhart</u>, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed 2d 203 (1985). It has been the United States Supreme Court's holding in several cases that a guilty plea is involuntary when it has been mislead, misinformed of the consequences of pleading guilty, when it is coerced by intimida- tion of the product of ineffective assistance of counsel.

14

In the case at bar, it cannot be disputed that movant received ineffective assistance of counsel, prior to entering his plea of guilty and when he entered his conditional plea of guilty.

Therefore, movant's conditional plea of guilty was involuntary and it is void and of no effect, and may be attacked collaterally, even after final judgment has been entered. Macibroda V. United States, 368 U.S. 487, 7 L.Ed 2d 578, 78 S.Ct. 563: Moore V. Bryant, 348 F.3d 238 (7th Cir.2003) (Counsel gave inaccurate advise to induce guilty plea); United States V. Cortez, 973 F.2d 764 (9th Cir.1992)( The defendant's belief based on misrepresentations of counsel rendered his plea involuntary.).

II.   **MOVANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL MR.GERALD J.COLLINS, COURT APOINTED AND COUNSEL MR.FREDERICK F.COHN, RETAINED FAILED TO FILE A MOTION TO SUPPRESS EVIDENCE UNDER MOVANT'S FOURTH AMENDMENT RIGHTS BECAUSE MOVANT'S CONSENT TO SEARCH HIS VEHICLE WAS UNKNOWING AND INVOLUNTARLY MADE.**

Movant asserts that he received ineffective assistance of counsel because movan't previous attorneys failed to file a motion to suppress evidence that was discovered after a search of movant's vehicle. The evidence that was discovered in the vehicle was the essential to the charges that movant plead guilty to. Neither counsel bother to file a motion to challenge the voluntariness of movant's consent to search. Movant requested that they file a motion challenging the consent, but counsel Mr.Cohn and Mr.Collins both refused to do as movant had so requested. Counsels did not bother to investigate if such a motion should be prepared and filed. Mr.Gerald J.Collins and Mr.Frederick F. Cohn were ineffective in failing to file a Fourth Amendment motion.

Movant submits that counsels were ineffective for not filing a Fourth Amendment motion to suppress evidence. Kimmelman V. Morrison, 477 U.S. 365, 383, 106 S.Ct. 2574, 92 L.Ed 2d 305 (1986); Owens V. United States, 387 F.3d 607 (7th Cir.2004)( counsel provided ineffective assistance of counsel when he failed to file a fourth amendment motion to suppress evidence); Duarte V. United States, 81 F.3d 75 (7th Cir.1996) (Trail counsel's failure to file motion to suppress evidence where defendant advised counsel he did no consent to the search and, had collaborating evidence could constitute ineffective assistance of counsel); United States V. Easter,539 F.2d 663 (8th Cir. 1976) (Trail counsel's failure to file motion to suppress illegally seized evidence without a warrant was ineffective.).

Movant submits to this Court that his consent to search was not voluntary as required by the Fourth Amendment's prohibition against warrantless searches.

"Whether a consent to a search was in fact "voluntary" or was the product od duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth V. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed 854 (1972); United states V. Grap, 403 F.3d 439, 442 (7th Cir.2005)( The Goverment bears the burden of proving by a preponderance of the evidence that the consent is voluntary and freely given. Grap, 403 F. 3d at 442. Whether consent is voluntary is a question of fact that is dependant upon the totality of the circumstances. Schneckloth, 412 U.S. at 227, 93 S.Ct. 2041; Grap, 403 F.3d at 442.

See United States V. Santiago, 428 F.3d 699, 704 (7th Cir.2005)(
Factors that are considered whether consent was voluntary include: (1)
the persons's age, intelligence, and education; (2) whether he was
advised of his constitutional rights; (3) how long he was detained
before he gave consent; (4) whether consent was immediate, or was
prompted by repeated requests by authorities; (5) whether any physical
coercion was used; and (6) whether the individual was in police cust-
ody when he gave consent.

In the case at bar, there are factors that are relevant to movant's
involuntary consent. Movant was arrested at his exgrilfriends house
on October 23,2002, in the early morning hours. The FBI with a show
of force entered the apartment to arrest movant. Movant was taken
into custody and was not advised of his constitutional rights before
any questioning took place, he was in the custody of agents who had
firerarms, he was asked in repeated times for consent to search,
he was not advised that he could refuse consent and he was under
duress by the events that were taking place when he was arrested. He
felt that he could not refuse to the consent.

Counsel Mr.Gerald J.Collins and counsel Mr.Frederick F.Cohn, did
not file a motion challenging the consent and as a result movant has
been prejudiced by their ineffectiveness.

For the following reasons presented movant's consent should not
be considered as being voluntary. All evidence obtained as a result
must be suppressed as the fruits of the poisonous tree. Wong Sun
V. United States, 371 U.S. 471 (1963).

III.    MOVANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN
MR.GERALD J.COLLINS, COURT APPOINTED AND MR.FREDERICK
F.COHN, RETAINED FAILED TO FILE A MOTION TO SUPPRESS
THE STATEMENTS MOVANT MADE BEFORE BEING ADVISED OF HIS
MIRANDA RIGHTS AND ALSO, STATEMENTS MOVANT MADE AFTER
REQUESTING A LAWYER.

Movant asserts that he received ineffective assistance of counsel
as guaranteed by the Sixth Amendment to the United States constitut-
ion. Specifically, when counsel Mr.Gerald J.Collins and counsel Mr.
Frederick F. Cohn did not file a motion to suppress the statements
that movant made to the authorities before being given his Miranda
rights. And statements that movant further made after having been
given Miranda warnings and where movant refused to waive his Miranda
rights and requested a lawyer.

It cannot be disputed that counsels acted in an unprofessional
manner and were constitutionally ineffective for their failure to
file a motion to suppress the statements. A.M. V. Butler,  60 F.3d
787 (7th Cir.2004); United States V. Davenport, 986 F.2d 1047 (7th
Cir.1993)(The trail counsel's failure to file suppression motion
to suppress confession may constitute "cause" under ineffective
assistance of counsel for procedural defualt rule.); Martin V.
Maxey, 98 F.3d 844 (5th Cir.1996); Huynh V. King, 95 F.3d 844 (11th
Cir.1996)(Failure to file motion to suppress could be grounds for
ineffective assistance of counsel claim.); Goodwin V. Balkcom, 684 F.
794 (11 th Cir.1976)(trail counsel's failure to move to suppress
tape recordings that discussed defendant's prior conviction, and
failed to object to the admission of the tapes into evidence, was
ineffective assistance of counsel.).

18

Movant submits that on October 23,2002, at about 7:00 am, he was arrested at his ex-girlfriends apartment by the FBI and local police based on an arrest warrant. That after being taken into custody he was handcuffed and placed in a chair in the kitchen and that he was then interrogated by special agent Bassett without being advised of his Miranda rights.It cannot be argued that movant was not entitled to be advised of his Miranda rights under Miranda V. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Dickerson V. United States, 530 U.S. 428, 434-35, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

Movant asserts that S.A.Bassett, questioned him, that if he had any guns or any drugs in the apartment. Movant asserts that he said that he did not have any guns or drugs in the apartment. S.A.Bassett again asked movant that if he had any guns in the apartment to tell him (S.A.Bassett) because he did not want any of his agents getting hurt while they searched the apartment. Movant again responded that he did not have no guns or drugs in the apartment. The agents went and did a quick search of the upstairs of the apartment and returned to where movant and the other agents where. S.A.Bassett, then again asked movant another question, S.A.Bassett, asked movant that if it was his car that was parked out in the back of the apartment, which movant answered, that yes it was his car parked out in the back of the apartment. After S.A.Bassett, asked movant if it was his car out in the back of the apartment, S.A.Bassett, asked movant for consent to search the car. Movant who did not know he could refuse to consent and he was not informed that he did not have to consent to have his car searched acquieced to S.A.Bassett's request.

Movant's responses to where S.A.Bassett, questioned movant about ownership of the car was interrogation and should have also been preceeded by Miranda warnings. Movant's statement that he owned the car that was parked out in the back of the apartment was testimonial and incriminating. United States V.Smith, 3 F.3d 1088 (7th Cir.1993); United states V.Monzon, 869 F.2d 338, 342 (7th Cir.)( officer's question regarding ownership of car was likely to elicit incriminating response and cannot be asked absent Miranda warnings), cert. denied, 490 U.S.1075, 109 S.Ct. 2087, 104 L.Ed 2d 650 (1989); United states V. Henley,984 F.2d 1040, 1043 (9th Cir.1993)(inquiry regarding defendant's ownership of vehicle called for testimonial answer, because agent should have known that his question was likely to elicit incriminating response. (Exhibit-B)(preliminary hearing transcript of October 28,2002, page 5, lines 20, 21 and 22).

After all this interchange transpired, movant was then taken to the Aurora Police Department (APD), by S.A.Bassett and S.A.Cotigula. At the (APD), movant was taken into an interrogation room, by S.A. Bassett and S.A.Cotigula and movant was again interrogated by S.A. Bassett without any MIranda warnings. There, S.A.Bassett, asked movant if the voices that were being played for him of a tape recorder, that were taken of a wire-tap were recognized, movant responded that it was his voice and that of Juan Corral. (Exhibit-C)( preliminary hearing transcript of October 28,2002, page 8, lines 20, 21, and 22). At this point movant refused to answer anymore of S.A.Bassett's questions and immediately requested a lawyer. Movant was than for the first time informed of his due rights under Miranda. Movant refused to waive his Miranda rights and the interrogation was terminated and he was returned to the holding cell.

20

Movant was then fingerprinted and photographed. He was then taken by S.A.Bassett and S.A.Cotigula to their car and headed towards the highway and to Chicago.

While out on the highway, S.A.Bassett received a phone call on his celullar phone and after talking for several minutes , S.A.Bassett, asked movant for the location of the car keys. Movant answered that the keys were in his coat pocket and it was by the bed or ontop of the dresser in the bedroom where he had been sleeping prior to his arrest. (Exhibit-D). S.A.Bassett's continous questions for the car keys and the location constituted interrogation and could not have been asked unless movant was advoised of his Miranda rights.  See New York V.Quarles, 367 U.S. 649, 652, 655, 104 S.Ct. 2626, 81 L.Ed. 2d 550 (1984)(officer's interrogated defendant when he asked where the gun was located and defendant nooded in direction and said,"over there").

The questions that S.ABassett asked movant after having informed movant of his Miranda rights and, where movant refused to waive his Miranda rights where prohibited under Edwards V. Arizona, 451 U.S. 477, 68 L.Ed.2d 378 (1981) ("when an accused invikes his right to have counsel present during custodial interrogation, his subsequent response to questioining, even after additional admonishments, does not constitute a valid waiver. "[A]n accused..having expressed his desire to deal with the police only through counsel, is not subject to furtehr interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communucation, exchanges or conversations with the police.")

In the case at bar, it cannot be argued that movant was denied
effective assistance of counsel and that counsel's Mr.Gerald J.Collins
and Mr.Frederick F.Cohn's performance was unprofessional. The state-
ments that movant made were in violation of his Miranda rights and
should be suppressed as the "fruits of the poisonous tree." Wong Sun
V. United States, 371 U.S. 471 (1963).

IV.    **MOVANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN MR.
FREDERICK F.COHN, RETAINED FAILED TO INVESTIGATE MOVANT'S
CASE AND AS A RESULT FILED A MOTION TO SUPPRESS EVIDENCE
AND STATEMENTS AND FILED AN APPEAL THAT HAD NO MERITS.**

Movant asserts that he received ineffective assistance of counsel
at a critical stage of the proceedings. Specifically, during the pre-
trial stages of movant's case where counsel should have investigated
the case  and presented a favorable defense. Instead counsel choose
to file a motion to suppress evidence and statements, that had no
merits in any Court. Counsel neglected to review all the discovery
that the Goverment had present to the defense. Jones V. Barnes, 463
U.S. 745 (1983)(identifying pre-trail as among the critical stages
which requires effective assistance of counsel).

As a result of of counsel's neglect in reviewing all the issues
that could have had merits, counsel choose to file a motion to supp-
ress evidence based on a Fifth Amendment violation. The motion was
based on the consent to search that movant gave the authorities and
counsel argued that asking for consent,after movant had requested a
lawyer was a violation of his MIranda rights and that all evidence
had to be suppressed. (Exhibit-E)

The District Court denied the motion and counsel later informed movant that in the Court of Appeals, there would be a reasonable chance to win the. See (exhibit-A), counsel's assertion that in the Court of Appeals there would be a better outcome, was completely not true because all the District and Appeals Court's have denied all the arguments that counsel made in the motion to suppress.

Counsel has a responsibility to investigate the case and prepare adequately, such failure to investigate can be and has been held to be reversable error. United States V. Myers, 892 F.2d 642 (7th Cir. 1990)(trail counsel's failure to read and review documents disclosed by the Goverment, which contained potentially exculpatory materials was ineffective assistance of counsel); Toro V. Fairman, 940 F.2d 1065 (7th Cir.1991)(defense counsel's failure to review police reports and laboratory reports constituted ineffective assistance of counsel); Turner V. Duncan, 158 F.3d 449 (5th Cir.1998)(trail counsel's failure to conduct a pretrail preparation was not a stragetic decision and required a remand for an evidentiary hearing to determine whether a pretrail investigation would have produced, a conviction of a lesser degree); Harris By and Through Ramseyer V. Wood, 64 F.3d 1432 (9th Cir.1995)(trail counsel's failure to investigate and prepare amounted to ineffective assistance of counsel); Goodwin V. Balkcom, 684 F.2d 749 (11th Cir.1982)(trail counsel's flack of pretrail investigation which deprived defendant of potential defense, constituted ineffective assistance of counsel).

In the case at bar, movant's counsel failed to investigate movant case before preparing and filing the suppression motion. Counsel. further ignored other issues that would have been favorable to movant.

24

Counsel's actions deprived movant of fair and just proceedings
in the District Court, where counsel should have carefully done a
review of movant's case. Counsel's actions are clearly unprofess-
ional and the result prejudiced movant. <u>Strickland V. Washington</u>,
466 U.S. at 694.

**v.    MOVANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN MR.
FREDERICK F.COHN FAILED TO MAKE AN OBJECTION TO THE DRUG
QUANTITY AND TO THE RELEVANT CONDUCT, BEFORE MOVANT'S
SENTENCING.**

Movant asserts that he received ineffective assistance of counsel
as guaranteed by the Sixth Amendment to the United States Consti-
tution. Specifically, when counsel Mr.Frederick F.Cohn, did not
make any objections to the drug quantity that was used to sentence
movant.

A. Movant was charged by way of indictment to a count thirteen,
with possession with intent to distribute cocaine, being on or
about October 23,2002, 21 U.S.C. §841(a)(1). And that that was the
charge based from a search of where drugs were discovered in the
car movant had admitted was his. Movant submits that the correct
amount that were discovered were (471.8 (g) grams) of powder cocaine.
See (exhibit-F), and not the 500 (g) grams that the Goverment used
at his plea hearing to start movant at an offense level of 26. The
quantity of 500(g) grams was incorrect. Level offense of 26, is for
a quantity of at least 500 (g) grams but less than 2 kilograms of
cocaine. The offense level of 26 as a starting point was incorrect
and counsel did not object to the error.

B. Movant was further prejudiced by counsel's continous failure to make objections at sentencing to the relevant conduct that was used to enhance movant's sentence. Counsel had a professional duty to make the objections against the relevant conduct that the Goverment used to increase movant's offense level and sentence.  Nicholson V. United States, 75 F.ed 1137 (7th Cir.1996)(unprofessional failure to challenge relevant conduct as violative of U.S.S.G. §1B1.3 prejudiced defendant within meaning of Strickland); United States V. Acklen, 47 F.3d 739, 742-744 (5th Cir.1995)(counsel's performance was below objective standard required by SIxth Amendment and defendant was prejudiced where counsel failed to object to method used to determine amount of drugs involved as relevant conduct.

Movant submits that the drug quantity invovlved in the offense t0 what he was charged with and plead guilty to should be the (471.8 (g) grams) of cocaine that were found in his vehicle on October 23,2002 as charged in the indictment. Movant's offense level was further increased by another two (2) levels for the relevant conduct of two (2) kilograms of cocaine, that the Goverment used as relevant conduct which were from a transaction that supposevdly occured between Juan Corral and movant, between January and Febuary of 2002. Where Juan Corral, supposevdly, gave movant one (1) kilogram of cocaine and movant gave Juan Corral one (1) kilogram back. (Exhibit-G) at preliminary hearing tr. pg. 5, lines 15, 16, 17, 18, and 19.

Juan Corral was arretsed on June 24,2002, and movant was arrested on October 23,2002. Movant plead guilty to the charge that he possessed the cocaine that was discovered in his car on the day of his arrest October 23,2002. The relevant conduct is from the transaction that accured ten (10) months from when movant was arrested and for what movant plead guilty to.

26

The relevant conduct that was used to increase movant's base offense level and sentence should not be relied as correct. Because it was not "part of the same course of conduct or common sheme or plan" as the convicted offense. United States V. McGowen, 478 F.3d 800 (7th Cir.2007); United States V. Ortiz, 431 F.3d 1035, 1040 (7th Cir.2006); United States V. Bullock, 454 F.3d 637, 641 (7th Cir.2006) (insufficient showing that cocaine transactions taking place 2 miles away and 2 years after the charged conspiracy were relevant conduct).

With the relevant conduct and the incorrect drug amount that was used to sentence movant it set his base offense level at 28, setting his imprisonment of 87-108 months. The correct level should be at offense levl of 24, minus the 3-point reduction for movant's acceptance of responsibility the correct level should be a level 21, 41-51 months of imprisonment. On the whole and because of movant's counsel who failed to object to the error that accurred here movant's offense level was increased by four (4) levels, resulting at an additional longer sentence to serve that is required for the amount of drugs that movant plead guilty to in count thirteen. Glover V. United States, 531 U.S. 198, 292 (2001)(the standard for prejudice sufficient to be cognizable on a §2255 motion has been defined by the Supreme Court to be the imposition of any "unwarranted term of imprisonment").

Movant's sentence and offense level should be corrected to be at level 21, with a semtence of 41-51 months of imprisonment.

## VI. MOVANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN MR.FREDERICK F.COHN, FAILED TO FILE A MOTION REQUESTING A LIMITED REMAND OF MOVANT'S SENTENCE UNDER THE DECIDED SUPREME COURT CASES BLAKELY/BOOKER.

Movant asserts that he received ineffective assistance of counsel when counsel Mr.Frederick F.Cohn, failed to request a limited remand of movant's sentence. Movant submits that when he was sentenced under the then "Mandatory Sentencing Guidelines" on Septmeber 9,2003. And that movant had a direct appeal when the Supreme Court decided the cases of Blakley/Booker, rendering the Guidelines unconstitutional.

Movant submits that he wrote counsel that he wanted counsel to preserve the issue and raise it in movant's direct appeal. (Exhinbibit-H) Counsel wrote movant back and assured movant that he was in the process of preparing an amended brief to raise Blakely. (Exhibit-I). But counsel never filed any amended brief raising the Blakely or Booker issues in movant's direct appeal.Counsel abandoned movant when he did not file the requested limited remand under Blakely and Booker.

Movant's judgment should be recalled and movant should be allowed to have his sentence remanded and allow the Honorable Court to give movant an opportunity to present issues for a sentence not under the Guidelines as he was sentenced under on September 9,2003.

Counsel's misleading an untruthful response was unprofessional and movant should not be punished for that.

VII.    **MOVANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN
COUNSEL MR.FREDERICK F.COHN, FAILED TO FILE A PETITION
FOR A WRIT OF CERTIORARI IN THE SUPREME COURT.**

Movant asserts that he received ineffective assistance of counsel
when Mr.Frederick F.Cohn, did not file a Petition for a Writ of
Certiorari in the Supreme Court, after his direct appeal was affirm-
ed by the Seventh Circuit Court of Appeals on July 16,2007.

Movant submits that counsel wrote movant informing him that the
Court of Appeals had affirmed his direct appeal. Movant wrote counsel
back to acknowledge his letter and also asking counsel to file a writ
of certiorari in the Supreme Court. Counsel wrote movant back where
he requested from movant at least $2,000.00, if movant wanted him
to proceed. (Exhibit-J)

Movant wrote counsel back to inform counsel that neither movant
nor movant's family had any money to pay counsel to proceed with the
filing of the petition for writ of certiorari. (Xhibit-K) Movant
asked counsel if counsel could request appointment from the Court
of Appeals under the criminal justice act (CJA), because of movant's
indigent status. Counsel dnot returned any response to the letter
movant sent counsel, requesting counsel request appointment under the
criminal justice act.

Additionally, prior to movant's direct appeal being denied he had
file a petition for the appointment of counsel under the (CJA) but
movant's petition was never decided or ruled on by the Court of
Appeals. (Exhibit-L)

Counsel refused to file a petition for a writ of certiorari because movant did not pay the amount that counsel required in order for counsel to proceed with such filing. It was counsel's professional duty to continue with the representation of movant and file the desired writ of certiorari  See Circuit rule 4:  Trail counsel in a criminal case, whether <u>appointed</u> or <u>retained</u> is responsible for the continued representation of the client desiring to appeal unless specifically relieved by the court of appeals upon a motion to withdraw for good cause.   <u>Wilkins V. United States</u>, 441 U.S. 468, 469, 99 S.Ct. 1829, 60 L.Ed.2d 365 (1979); <u>United States V. Price</u>, 491 F.3d 613 (7th Cir.2007);  <u>United States V. Howell</u>, 37 F.3d 1207, 1209, (7th Cir.1994). Counsel's actions are contrary to the above cited cases where counsel did not file a petition for writ of certiorari because he was not payed by movant.

**VIII.    MOVANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN MR.FREDEERICK F.COHN FAILED TO REQUEST A REDUCTION FOR MOVANT'S ACCEPTANCE OF RESPONIBILITY §3E1.1. ON COUNT FOURTEEN OF THE INDICTMENT.**

Movant asserts that he received ineffective assistance of counsel when counsel did not request a reduction for movant's acceptance of responsibility on count fourteen. On count fourteen of the indictment movant was charged with 18 U.S.C. §922(g)(1), possessison of a firearm after having previouly suffered a felony conviction. Movant was sentenced on September 9,2003 to that charge to 63 months imprisonment.

Movant submits that counsel failed to inform the court that movant qualified for an acceptance of responsibility reduction.

Movant should have been started at an offense level of 20, on count fourteen to which he lead guilty to. Movant had one (1) felony conviction which was the result of the §922(g) charge. At sentencing the court sentenced movant to sixty three (63) months concurrent to count thirteen. Movant did not receive no acceptance of responsibility under §3E1.1 for count fourteen.

Movant's offense level should have been started at 20, minus the three (3) levels for his acceptance of responsibility on count fourteen of the indictment, resulting at a level 17, (27-33) months of imprisonment.

It cannot be disputed that movant was prejudiced by counsel's errors and deprived movant of the effective assistance of counsel that he was entitled to. Movant should be awarded the 3 levels for his aceptance of responsibility on count fourteen.

IX.    **MOVANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL MR.FREDERICK F.COHN, FAILED TO FILE A MOTION TO REQUEST A DOWNWARD DEPARTURE FROM THE SENTENCING GUIDE-LINES**

Movant asserts that he received ineffective assistance of counsel as guaranteed by the Sixth Amnedment to the United States constitution, when Mr.Frederick F.Cohn, did not request a downward departure from the guidelines before movant was sentenced.

Movant submits that counsel's failure to file a downward departure Under U.S.S.G.§5k2.0 for circumstances "not adequately taken taken into consideration by the Sentencing Commission."). Movant submts that he as a departable alein will be held to serve alonger sentence than a United States Citizen.

31

Movant who is not a United States citizen, because of his guilty plea and conviction will be deported to his native country Mexico. In addition to movant's deportation, he will not receive the same benefits of a U.S.citizen, such as time reduction from his sentnnce for completing any of the programs offered, as drug and alcohol, nor will movant be entitled to the 6 month half-way house. A U.S.citizen will normally see a reduction of at least 12 to 18 months off his prison sentence for the mentioned reasons and movant who is onsly a U.S.resident will not receive any reduction for completing the same programs that the person who is a U.S.citizen completes. As a result movant stands to serve a 12 to 18 month longer sentence.

In addition to movant's deportable matter, movant has a medical condition, known as (keracotonous), for which movant had a cornea transplant before his incarceration in order to correct the advanced stage of the eye desease. And because of his incarceration he does not have the same medical attention as when movant was  not incarcerated.

Furthermore, movant who has lived in the United States since the age of 5, he will be deported and separated from his immediate family, he willbe deported to a country where he was born but has not lived at and has not been accustmoed to.

In the case at bar, counsel was ineffective for not requesting a downward departure from the guidelines for movant while still movant was in the District Court.  See United States V.Bautista,258 F.3d 602, 605 (7th Cir2001)("Acourt has authority to depart from the guidelines in cases presenting "mitigating circumstances not adequately taken into consideration by the commission") citing Koon V.U.S. 518 U.S. 81.

## CONCLUSION

Wherefore, Miguel Bustamante, movant, prays that his motion will be granted by this Honorable Court and that it orders the following;

(1) That this Court order an evidentuary hearing on all the issues of ineffective assistance of counsel presented herein,

(2) that counsel be appointed to movant to represent movant in the proceedings herein and to further perfect an present the issues that movant has tried to bring as best as possible,

(3) that this Court further grant him all the relief to which he may be entitiled to in these proceedings,

(4) and that his conviction and sentence be reversed.

Date: June 8th,2008

Respectfully submitted,

Miguel Bustamante
Reg. No. 14995-424
Big Spring Correctional Center
Airpark Unit
3700 Wright Avenue
Big Spring, texas 79720

33

## CERTIFICATE OF SERVICE

I, Miguel Bustamante, the movant, hereby certify that on this date I did serve one (1) original and (3) copies of the foregoing pleading, **MEMORANDUM IN SUPPORT OF MOVANT'S 28 USC §2255 MOTION AND APPLICATION.** Via U.S. mail by sealing said documents into a pre-addressed, and by certied mail with sufficient postage affixed thereon, and by mailing same to;

    Micheal W.Dobbins, U.S.Clerk
    United States District Court, Northern District Illinois
    Everett McKinley Dirksen Building
    219 S.Dearborn St., 20th Floor
    Chicago, IL 60604

Also, one (1) true copy was mailed to:

    Christina Egan
    Assitant U.S.Attorney
    219 S. Dearborn Street
    Suite 500
    Chicago, IL 60603

Such service was completed upon placing said mailings into the **Big Spring Correctional Center's,** prison mail depository. I certify under penalty of perjury that the foregoing is true and correct. 28 U.S.C. §1746.

Executed on this 8th day of June,2008.

                                  Respectfully submitted,

                                  *Miguel Bustamante*

                                  Miguel Bustamante
                                  Reg. No. 14995-424
                                  Big Spring Correctional Center
                                  Airpark Unit
                                  3700 Wright Avenue
                                  Big Spring, Texas 79720

# ATTACHMENTS

# EXHIBIT   A

# FREDERICK F. COHN, LTD.
### ATTORNEY AT LAW
### SUITE 700
### 601 SOUTH LASALLE STREET
### CHICAGO, ILLINOIS 60605

—

TEL: (312) 641-0692
FAX: (312) 641-1777

November 25, 2003

Mr. Miguel Bustamante
No. 14995-424
FCI Fort Dix
P.O. Box 7000 (Unit 5841)
Fort Dix, NJ  08640

Re:  United States v. Miguel Bustamante
     No. 03-3338

Dear Mr. Bustamante:

Enclosed is a copy of the Brief which I am filing on your behalf.  We have a reasonable chance of winning.

Your sister seems to have disappeared.  I cannot reach her.  She must send me a payment toward the fee.

Very truly yours,

FREDERICK F. COHN

FFC/ds
Enclosure

# EXHIBIT  B

5

1    and drives it to Mexico.  For this he's paid  a fee and some-

2    times receives kilograms of cocaine from the  cartel for his

3    services, which he then sells locally in the  Aurora area.  As

4    also alleged, he was a supplier of cocaine to Juan Corral

5    before Juan Corral had other suppliers, and as is also alleged,

6    now Juan Corral, he supplies Mr. Bustamante.

7        The complaint specifies three calls, one that's on

8    each of three days in June of 2002, in which  Mr. Bustamante and

9    Juan Corral discuss Corral providing Mr. Bustamante with quan-

10   tities of cocaine.  As alleged, they're discussing Corral

11   receiving two kilograms of cocaine, one of which he will

12   provide Mr. Bustamante, and to put this in context, your Honor,

13   a kilogram of cocaine sells wholesale at this level for between

14   $17,000 and $20,000 with a much higher street value.

15       In addition, as alleged in the complaint, Juan

16   Corral, who is again Mr. Bustamante's supplier of cocaine along

17   with other defendants, had supplied Mr. Bustamante with a total

18   of an additional kilogram of cocaine and that was between

19   January and February of 2002.

20       Second, I'd like to direct the Court's attention to

21   the circumstances of his arrest.  Here Mr. Bustamante was

22   arrested in a car which he admitted was his.  Found at the time

23   of his arrest in his car was a half kilogram  of what agents

24   determined to be very pure powder cocaine.  What was also found

25   in his car at the time of his arrest was a . 9 mm. loaded gun.

Interrogation

**EXHIBIT  C**

1    Mexico.  This has -- And I'd like to point out to your Honor

2    that pursuant to investigation done by the agents and

3    intelligence that they received from El Paso,  that show border

4    crossings of cars into Mexico, show that his  car -- This is the

5    car again that he was in at the time of his arrest -- has

6    crossed five times this year into Mexico through the El Paso

7    border in January 4th of 2002, February 15th  of 2002, February

8    16th of 2002, March 5th, 2002 and May 6th, 2002.

9         Again, this demonstrates that he spends a significant

10    amount of time going back and forth into Mexico, which again

11    speaks to risk of flight and also corroborates, it's our

12    position, corroborates the information alleged in the complaint

13    that he operates as a driver of currency for  the cartel from

14    Aurora down to Mexico.

15         Directing your Honor's attention Subsection G.2, the

16    weight of the evidence, here the weight of the evidence against

17    this defendant is strong.  As alleged in the  complaint, the

18    defendant made statements that were recorded  off of a federal

19    wiretap that details his drug-dealing activity.  Mr.

20    Bustamante, at the time of his arrest, made statements

21    admitting that it was his voice on the wiretap speaking to Juan

22    Corral.

23         Additionally, there are three cooperating witnesses

24    who also talk about his drug-dealing activity and role as a

25    transporter of money to Mexico and the cartel, and those are

# EXHIBIT    D

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription  10/28/2002

On October 23, 2002 Special Agents (SAs) of the Federal Bureau of Investigation (FBI), Chicago division Evidence Response Team (ERT) received a voluntary consent to search the residence of VANESSA WILLIAMS, located at ███████████████████. WILLIAMS signed a FD-26 Consent to Search form dated October 23, 2002. VANESSA MICHELLE WILLIAMS, born July 6, 1967, ████████ ███████████████████ returned from her place of business after being advised that MIGUEL BUSTAMANTE had been arrested at her residence. The following personnel participated in the search:

        SA Robert W. Warfel-Team Leader/Evidence Recovery log
                            keeper/Photographer/Searcher
        SA Timothy Eley - Searcher/photo log keeper
        SA Lori Campbell - Searcher/Photographer
        SA Guy R. Morice (ATF)- Searcher
        SA Christopher Bayless (ATF) - Searcher
        Aurora Police Department (Site security)

Prior to the search commencing at the above location, members of the Chicago FBI Special Weapons and Tactics (SWAT) team cleared and secured the location apprehending BUSTAMANTE in the process. WILLIAMS stated that BUSTAMANTE had stayed the night in her residence and that he had arrived at approximately 11:00 pm on the evening of October 22, 2002. According to WILLIAMS, BUSTAMANTE was asleep in her bed when she left for work in the morning. WILLIAMS stated that she used to date BUSTAMANTE but that they were no longer a couple and that he primarily stayed with his mother. WILLIAMS provided a written consent to search, witnessed by SA Guy R Morice, from the Bureau of Alcohol, Tobacco, and Firearms. WILLIAMS stated that BUSTAMANTE never stored any drugs, guns, or money at her residence because of her children.

A preliminary survey was conducted of the residence at 1217 Nantucket, Aurora, Illinois by SA Robert W. Warfel. Overview photographs of the location were taken prior to commencing the search. Family members residing at the address were asked to remain in the living room and dining area for personnel safety until the conclusion of the search. No items of evidence were removed from the property with the exception of a set of keys to a

---

Investigation on  10/23/02  at  Aurora, Illinois

File #  245D-CG-117840-Sub 302 · 202     Date dictated  10/28/02

by  SA Robert W. Warfel

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

**ADDITIONAL DISCOVERY MATERIAL**          **248**

FD-302a (Rev. 10-6-95)

245D-CG-117840

Continuation of FD-302 of ___Search_____ , On __10/23/02__ , Page __2__

white Lincoln Navigator, Illinois license number 362 9043, VIN 5LMPU28L7WLJ40236, owned by the subject BUSTAMANTE. A separate consent to search was executed by BUSTAMANTE for the vehicle and the details of that search are contained in a separate FD-302. The location of the keys for the vehicle were shared by BUSTAMANTE as being on the bed in the room where he was arrested. WILLIAMS confirmed that the keys were not hers and that they belonged to BUSTAMANTE.

At the conclusion of the search, WILLIAMS executed the back of the FD-26 noting the termination of the search at 9:48 a.m. on October 23, 2002 and that nothing, with the exception of the Navigator keys, was removed from her custody. The back of the form was witnessed by Special Agent Lori J. Campbell of the Chicago FBI. A copy of the form is attached for reference and the original is maintained in a 1A envelope in the file.

The following reflects approximate times and events at the 1217 Nantucket address in Aurora, Illinois:

| TIME | EVENT |
|------|-------|
| 7:40 a.m. | Location turned over for search. |
| 8:10 a.m. | Owner grants consent to search. |
| 8:18 a.m. | Preliminary survey conducted. |
| 8:20 a.m. | Overview photographs begun. |
| 8:30 a.m. | Overview photographs complete. |
| 9:30 a.m. | Search terminated, exit photos initiated, no evidence collected |
| 9:38 a.m. | Exit photographs of residence complete. Search team exited residence. |

# EXHIBIT E

cause he knew that other people were involved with Corral in the distribution of drugs. The court said that the phone call in which Pena asked Corral if there was anyone else in the car who could sell him drugs demonstrated that "Pena knew that others were involved, others could be trusted, others were in the business of distributing drugs pursuant to the conspiracy." The district court found that Pena's base offense level was 38 and increased it by two levels for possession of a firearm. With a criminal history category of IV, Pena's Guidelines range was 360 months to life.

Pena argued for a sentence at the low end of the Guidelines range, asserting that he was a minimal participant in the conspiracy and that a thirty year sentence would be more than sufficient to accomplish the sentencing goals set out in § 3553(a). The district court rejected Pena's argument and sentenced him to life in prison on the conspiracy count and a concurrent 120 month sentence on the felon in possession count. The court emphasized the need to deter other gang members from dealing drugs.

### D. Bustamante

On October 23, 2002, police arrested Bustamante, transported him to the Aurora Police Department, and advised him of his *Miranda* rights. Bustamante invoked his right to remain silent and his right to counsel, and police asked him to sign a consent to search his vehicle. He signed the form, and when police searched the vehicle, they found drugs and a firearm.

Bustamante moved to suppress the evidence found during the search, but the district court denied the motion. On May 15, 2003, Bustamante entered a blind guilty plea. The district court sentenced him to a total of 123 months in prison.

### D. Bustamante

Bustamante argues that the district court should have granted his motion to suppress because police officers obtained consent to search his vehicle after they read him his *Miranda* rights and after he invoked his right to counsel. The Court previously has rejected this argument. *Miranda* and its progeny hold that "before police can initiate custodial interrogation of a defendant, they must advise the defendant of certain rights." *See United States v. Shlater*, 85 F.3d 1251, 1255-56 (7th Cir. 1996). Though all interrogation must cease once a defendant in custody has invoked his right to counsel, a request to search a vehicle or home is not likely to elicit an incriminating response and is therefore not interrogation. *See United States v. McClellan*, 165 F.3d 535, 544 (7th Cir. 1999); *Shlater*, 85 F.3d at 1256; *see also United States v. Stevens*, No. 05-41369, 2007 WL 1428594, n.3, ___ F.3d ___ (5th Cir. 2007) (collecting cases); Wayne R. LaFave, Jerold H. Israel, & Nancy J. King, Criminal Procedure § 3.10(b) (2d ed. 2007) (stating that a statement granting "consent to a search . . . is neither testimonial nor communicative in the Fifth Amendment sense.") (internal quotation omitted). Accordingly, *Miranda* does not protect a defendant who is in custody from a police officer's request to search his vehicle, and the district court correctly denied Bustamante's motion to suppress.[6]

---

[6] Bustamante contends that the Supreme Court's decision in *Dickerson v. United States*, 530 U.S. 428 (2000), implicitly overruled *Shlater* and *McClellan*, but that case did not address the meaning of "interrogation" for purposes of the Fifth Amendment. It simply held that *Miranda* warnings are constitutionally required and that Congress cannot overrule that requirement by statute. *Id.* at 444

**EXHIBIT  F**

North Central Laboratory

# CHEMICAL ANALYSIS REPORT

To: Special Agent in Charge
Federal Bureau of Investigation
219 So. Dearborn Street
Chicago, IL 60604

Date: November 20, 2002

Attn: SA Cory McGookin

## Case Number: 245D-CG-117840

### Analysis Summary and Remarks:

Laboratory No.: 147510
Exhibit 1 contains: Cocaine Hydrochloride and Caffeine
Gross Wt.: 545.1 grams (g)
Net Wt.: 471.8 g
Active Drug Ingredient: Cocaine Hydrochloride – 79 %
Amount of Pure Drug: 372.7 g
Reserve Wt.: 470.2 g

Analyst Khrishna A. James
Forensic Chemist
Date Completed: 11/08/02

Approved by Nelson A. Santos
Laboratory Director
Laboratory Location: Chicago, IL-cgy

Prosecution / Orig. Office / Laboratory / Hdqtrs / ........................................Page 1 of 1

**EXHIBIT  G**

# EXHIBIT  H

July 23, 2004


Miguel Bustamante  14995-424
F.C.I. Fort Dix, Unit 5703
P.O. Box 2000
Fort Dix, New Jersey 08640-0902


Frederick F. Cohn, Esquire
601 S. LaSalle Street, Suite 700
Chicago, Illinois  60605


RE:  Appeal of U.S. v. Bustamante, C.A. No. 03-3388


Dear Mr. Cohn,

        I am writing you because I have not heard from you since the
Supreme Court decisions in <u>Blakely</u> and <u>Putane</u>.  Ironic, isn't it,
that one decision helps directly and the other hurts directly.

        I am certain that you have filed to protect my rights over
the <u>Blakely</u> decision.  As your will recall, I am blamed for two
kilograms of relevant conduct.

        It may well be that you have received instructions not to
brief a <u>Blakely</u> issue  right away given the Seventh Circuit's
position and the conflict developing among the Circuits.  We are
hearing that the Courts of Appeal may filter some appeals so as
not to go back over them all again if the Supreme Court does
something in September.

        So that I am not lost in the chaos, I am writing you this
letter to advise that I definitely wish to preserve my <u>Blakely</u>
rights.  For safety's sake, I am cc'ing a copy for the Court of
Appeals.

        Please let me hear from you at the earliest time possible
with your thoughts.


Sincerely yours,


Miguel Bustamante

MB
cc:  Court of Appeals
     File

# EXHIBIT I

**FREDERICK F. COHN, LTD.**

ATTORNEY AT LAW

SUITE 595

35 EAST WACKER DRIVE

CHICAGO, ILLINOIS 60601

───

TEL: (312) 641-0692

FAX: (312) 641-1777

September 9, 2004

Mr. Miguel Bustamante
No. 14995-424
FCI Fort Dix
P.O. Box 2000 - 5703
Fort Dix, NJ  08640

Re:  United States v. Miguel Bustamante
     No. 03-3388

Dear Mr. Bustamante:

I am in receipt of your letter dated July 21, 2004.

I am preparing an Amended Brief to raise <u>Blakely</u>.

Please send a payment toward the fee.

Very truly yours,

FREDERICK F. COHN

FFC/ds

P.S.  My new address is 35 E. Wacker Drive, Suite 595,
      Chicago, Illinois 60601.

F.F.C.

**FREDERICK F. COHN, LTD.**

ATTORNEY AT LAW

SUITE 595
35 EAST WACKER DRIVE
CHICAGO, ILLINOIS 60601
———
TEL: (312) 641-0692
FAX: (312) 641-1777

September 10, 2004

Mr. Miguel Bustamante
No. 14995-424
FCI Fort Dix
P.O. Box 7000 (Unit 5841)
Fort Dix, NJ  08640

Re:  United States v. Miguel Bustamante
     No. 03-3388

Dear Mr. Bustamante:

   The <u>Blakely</u> case is being raised in the Court of Appeals
on your behalf.

                              Very truly yours,

                              FREDERICK F. COHN

FFC/ds

# EXHIBIT J

FREDERICK F. COHN, LTD.
ATTORNEY AT LAW
SUITE 1525
35 EAST WACKER DRIVE
CHICAGO, ILLINOIS 60601

TEL: (312) 641-0692
FAX: (312) 641-1777

September 28, 2007

Mr. Miguel Bustamante
No. 14995-424
Big Spring Correctional Center
Airpark Unit
3700 Wright Avenue
Big Spring, TX  79720

Re:  United States v. Miguel Bustamante
     No. 03-3388

Dear Mr. Bustamante:

Enclosed is the material you desire.

The Petition for Writ of Certiorari is due on October 14, 2007.

If you decide to have me proceed, I must be paid at least $2,000.00 in advance. I must receive the money by October 7, 2007.

Very truly yours,

FREDERICK F. COHN

FFC/ds
Enclosures

EXHIBIT   K

Miguel Bustamante
Reg. No. 14995-424
Big Spring Correctional Center
3700 Wright Avenue
Big Spring, Texas 79720


Frederick F.Cohn, LTD.
Attorney at Law
Suite 1525
35 Wacker Drive
Chicago, IL 60601                        August 6,2007


RE:  **UNITED STATES V. MIGUEL BUSTAMANTE**
       Case No. 03-3388


Dear Mr.Cohn:

   I am writing you this letter because I would like you to
file a Petition for a Writ of Certiorari. I know that you need
me to pay you if you will do anything further, but as I informed
you in my previously sent letters and the previous letter I sent
you a couple of days ago that I do not have any money and my
family does not have money either to pay for any appeals. I do
not know if you can request that the court appoint you under the
criminal justice act because I am indigent. As I had tried to
do before when I mailed a motion to the court of appeals and i
informed you about the motion I was going to file to ask the
court to appoint you under the CJA. This motion was when I did
inform you that my family had no money to pay you for the appeal
you had filed. You wrote me back and informed me that it was not
necessary for me to request that the court appoint you under the
criminal justice act, but I still filed the motion pro-se because
I do not want the money issue to be a problem and than maybe I
will not be getting the representation from your part.

   Mr.Cohn, please file that petition for a writ of certiorari
and request from the court of Appeals to appoint you under the
CJA and if the court grants the appointment of you cja you can
receive the payment you request from me in order to proceed.

I hope to hear from you soon.              Thank you kindly,

                                           _Miguel Bustamant_
CC:personal file                           Miguel Bustamante #14995-424

# EXHIBIT L

MIGUEL BUSTAMANTE

#.14995-424

FEDERAL CORRECTIONAL INSTITUTION

P.O. BOX 2000

FORT DIX, NJ. 08640

FEDERICK F. COHN, LTD.

   ATTORNEY AT LAW

      SUITE 595

35 EAST WACKER DR

CHICAGO, IL. 60601

RE: U.S. V. BUSTAMANTE                      **March 3, 2007**
      03-3388

Dear Mr. COHN:

    This letter is for the purpose of informing you as
to a **Motion** I will file **pro-se** in the Court of Appeals.
The Motion is for permission to file a Motion Asking the
Court for Authorization to Appoint you under the Criminal
Justice Act.

    The reason being the financial dificulties of not
having payed for your services and because my family nor I
are financially able to.

    This is why, I will see if the Court will accept my
Motion and appoints you under the Criminal Justice Act.

    I truely apologize for all and any inconvinience this
has caused for you by the unpaid services.

                         Sincerely.

                         Miguel Bustante

c.c. Personal File.                         Miguel Bustamante
                              #.14995-424

IN THE

UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appelle,

        VS.                NO. 03-3388

MIGUEL BUSTAMANTE,

Defendant-Appellant.

PETITION FOR PERMISSION TO FILE MOTION

FOR AUTHORIZATION TO APPOINT CURRENT

ATTORNEY UNDER CRIMINAL JUSTICE ACT

    Defendant/Petitioner, **Miguel Bustamante,pro-se,** who respectfully seeks this Honorable Court's permission to file a motion for appointment of Mr. **Federick F. Cohn,LTD** under the "Criminal Justice Act",**18 U.S.C § 3006 A.**

    Mr. Frederick F. Cohn, has represented Defendant, since April 29, 2003, Mr.Cohn has not been payed for his legal services.

    If this Honorable Court grants **Defendant/Petitioner,** this petition he will show cause and reasons why **he seeks** appointment under **Criminal Justice Act.**

C O N C L U S I O N

Defendant/Petitioner prays this **petition will be granted.**

Respectfully Submitted.

*Miguel Bustamab*

Miguel Bustamante,**Pro-Se**

#.14995-424 (Unit 5703)

F.C.I.

P.O. BOX 2000

Fort Dix, NJ. 08640

March 6, 2007

## CERTIFICATE OF SERVICE

I hereby certify that I have mailed a true copy of
PETITION FOR PERMISSION TO FILE MOTION ASKING COURT TO APPOINT
CURRENT ATTORNEY UNDER THE CRIMINAL JUSTICE ACT, TO
Lawrence S. Beaumont, Assistant United States Attorney.
2195 Dearborn Street, Suite 500, Chicago, Illinois 60604.
by placing it in the Fort Dix Prison Mailbox on /  / 2007,
postage prepaid.

Respectfully Submitted.

March 6, 2007

Miguel Bustamante,Pro-Se
#. 14995-424

IN THE

UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appelle,

        VS.                  NO. 03-3388

  MIGUEL BUSTAMANTE,

  Defendant-Appellant.

## PETITION FOR PERMISSION TO FILE MOTION FOR AUTHORIZATION TO APPOINT CURRENT ATTORNEY UNDER CRIMINAL JUSTICE ACT

    Defendant/Petitioner, **Miguel Bustamante,pro-se,** who respectfully seeks this Honorable Court's permission to file a motion for appointment of Mr. **Federick F. Cohn,LTD** under the "Criminal Justice Act",18 U.S.C § 3006 A.

    Mr. Frederick F. Cohn, has represented Defendant, since **April 29, 2003,** Mr.Cohn has not been payed for his **legal** services.

    If this Honorable Court grants **Defendant/Petitioner,** this petition he will show cause and reasons why he **seeks** appointment under Criminal Justice **Act.**

## C O N C L U S I O N

  Defendant/Petitioner prays this **petition will be granted.**

                         Respectfully Submitted.

March 6, 2007

                         Miguel Bustamante,**Pro-Se**
                         #.14995-424 (Unit 5703)
                         F.C.I.
                         P.O. BOX 2000
                         Fort Dix, NJ. 08640