

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

F I L E D

§
§
§
§
§
§
§
§
§

MIGUEL BUSTAMANTE,

　　　Movant,

VS.

UNITED STATES OF AMERICA,

　　　Respondant.

AUG 1 8 2008
AUG 18 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

No. 02 CR 719 18
No. 08 CV 3508
Honorable James F. Holderman

## MOVANT'S REPLY TO THE GOVERMENT'S RESPONSE TO DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE CONVICTION AND SENTENCE

COMES NOW, Miguel Bustamante, the movant, who is acting pro-se [1]/ to respectfully address this Court on the Goverment's claims that his claims under 28 U.S.C. § 2255 lack the merit to warrant the relief he requests. And that this Court should dismiss his (petition) because he has not established that he satisfies the standard for ineffective assistance of counsel based upon any of his grounds set forth:

The Goverment, in its response claims that the defendant was **not** denied the effective assistance of counsel that the Sixth Amendment has guaranteed every defendant in all criminal cases. And that his counsel Mr.Frederick F. Cohn, was not ineffective when: (1) counsel failed to review thoroughly movant's discovery material and as a result counsel failed to file motions to suppress evidence and also provided faulty advise to movant which caused him to enter into an unknowing and involuntary guuilty plea;(2) failed to file a motion to suppress evidence that was discovered during a warrantless search of movant's vehicle;

1/ movant pray that this Court will invoke the holdings set out in Haines V. Kerner, 404 U.S. 519 (1972).

(3) failed to file a motion to suppress statements that movant made before being given his Miranda rights and statements movant made after being given his Miranda rights and having requested a lawyer; (4) filed a motion to suppress evidence that had no merits and further appealed the meritless motion that was denied by the Court; (5) failed to object to the drug qauntity and to the 2 kilograms of cocaine that were at sentencing improperly included as relevant conduct; (6) failed to file an amended brief to raise the Blakely and Booker issues; (7) Did not file a petition for writ of certiorari because movant did not pay him; (8) failed to request a reduction of 3-levels for movant's acceptance of responsibility to count Fourteen; and (9) failed to request a downward departure because of movant's status as a deportable alien and a downward departure due to movant's health because of the lack of medical attention while incarcerated.

The Goverment claims that all the <u>errors</u> and <u>omissions</u> that counsel commited before movant's guilty plea and at sentencing did not amount to ineffective assistance of counsel. The Goverment is wrong, counsel's errors and omissions caused movant prejudice and were indeed acts of ineffective assistance that this Court should not tolorate. The Goverment wants to concede [only] on the [Blakely] [Booker] issue, when in fact all the issues that movant presents to this Court as errors that indeed caused movant prejudice.

Movant submits to this court that when a defendant is appointed counsel or he retains counsel, it is because the defendant is not capeable or has no knowledge of the law to proceed without a lawyer. As is in the case at bar, with movant. Because the defendant has counsel to represent him in the proceedings agaisnt him, the defendant is relying on the advocation of counsel and the defendant is assuming that counsel will defend him against his adversaries.

In the case at bar, movant heavily relied on counsel to defend him in the criminal case against him and to further defend him against his adversaries. The Goverment wants to fault movant for counsel's errors and omissions, that were committed by counsel prior to movant entering into a plea of guilty and at sentencing. Should movant be held responsible for the errors and omissions that counsel committed, and that caused prejudice to movant. Should movant be denied the relief that he seeks in his 28 U.S.C. § 2255, because counsel neglected or plainly ignoed these issues that movant is know presenting to this Court.

The Sixth Amendment right to counsel "attaches" with the filing of formal criminal charges and extends to all "critical stages" of the proceedings. Moran V. Burbine, 475 U.S. 412 (1986). Pre-trail and sentencing is, perhaps, the most important stage of the criminal just-cice process. It "is the time at which for many defendants the most important service of the entire proceedings that can be performed". American Bar Association (ABA) Standards for Criminal Justice (2d ED. 1980), 18-6.3(e), (Pre-trail and Sentencing Alternatives and Procedures, Duties of Counsel). "[T]he right to counsel is the right to efective assistance of counsel." Strickland V. Washington, 466 U.S. 686 (1984), (quoting McMann V. Richardson, 397 U.S. 759, 771 N. 14 (1970)).

Movant's counsel failed to meet the burden of their duties as premised above. And as a result prejudiced movant in the following ways as have been presented in movants (Memorandum In Support of His 28 U.S.C. § 2255 Motion)and in this (Reply to the Goverments Response to Movant's 28 U.S.C. § 2255 to vacate Conviction and the Sentence).

## I. ISSUES OF INEFFECTIVE ASSISTANCE OF COUNSEL PRIOR TO MOVANT'S ENTERING OF THE GUILTY PLEA

As movant has demonstrated that his guilty plea was unknowing and involuntary, due to counsel's lack of investaigation and lack of the thorough review of the discovery material. Counsel also provided faulty advise to movant which caused movant to accept to plead guilty. Counsel's faulty advise that the motion to suppress that had been denied by the Coourt and that it was a sure shot of winning on direct appeal, surely would make any defendant that is not knowledgeable of the law believe what counsel is telling him.

The Goverment claims that movant has just made vogue allegations about counsel being ineffective when indeed movant has demonstrated with evidence that counsel provided ineffective assistance of counsel which the Sixth Amendment guarantees every criminal defendant. The Goverment is wrong that movant is just making vogue allegations about counsel's ineffectiveness. As movant has demonstrated, counsel's lack of investigation led to the following errors and omissions; which did cause and prejudice to movant.

A.

Movant has asserted that had it not been for counsel's lack of investigation in this case and the misadvise, he would have gone to trail. Indeed movant had all along intended on going to trail and did not enter into a blind plea, until counsel provided him with the misadvise that he had a reasonable chance of winning on appeal the motion to suppress that was denied by the Court. Another factor was the lack of preparation for a trail by counsel. Trail was to commence on June 12, 2003 and instead of any trail preparation counsel had other plans in his agenda. (Exhibit 1)

4

It cannot be argued that counsel's lack of any preparation for a trail and plans to travel on or about the same time as the trail was to commence led to the misadvise that caused movant to acept to plea guilty.

The Supreme Court has held that "a defendant who pleads guilty upon the advise of counsel" may only attack the voluntary and the intelligent charactor of the guilty plea by showing that the advise he recieved "was constitutionally ineffective". Hill V. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed. 2d 203 (1985). It has been the United States Supreme Court's holding in several cases that a guilty plea is involuntary when it has been mislead, misinformed of the consequences of pleading guilty, when it is coerced by intimidation of the product of ineffective assistance of counsel.

In the case at bar, movant was misadvised by counsel and further counsel failed to review thoroughly the discovery material in movant's case which in turn lead movant into an involuntary guilty plea. Movant's conditional guilty plea was involuntary and it is void and of no effect, and may be attacked collaterally, even after final judgement has been entered. See  Moore V. Bryant, 348, 238 (7th Cir. 2003) (Counsel gave inaccurate advise to induce guilty plea); United states V. Cortez,973 F.2d 764 (9th Cir. 1992)( The defendant's belief based on the misrepresentation of counsel rendered his plea involuntary).

In the case at bar, counsel's misadvise and lack of investigation lead movant into an involuntary guilty plea. Counsel's performance was deficient and casued prejudice to movant. His plea should therefore be vacated.

B.

Movant asserts that he received ineffective assistance of counsel when counsel failed to file a motion to suppress evidence that was found after a warrantless search of his vehicle. Counsel's failure to file a Fourth Amendment motion challenging the evidence was deficient performance by counsel which in turn prejudiced movant.

Even though movant signed a consent to search. The consent was not voluntary as required by the Fourth Amendment's prohibition against warrantless searches. As in the case at bar, movant's vehicle was searched without a warrant . Counsel's failure to put the Goverment to show that the consent was indeed voluntary prejiduced movant. It is well settled that the Goverment bears the burden of proving by a proponderance of the evidence that any consent is voluntary and freely given. See Schneckloth V. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed. 854 (1972)("Whether a consent to search was in fact "voluntary" or was the product of duress or coercion, express or implied, is  a question of fact to be determined from the totaly of all the circum-stances."); United States V. Grap, 403 F.3d 439, 442 (7th Cir.2005); (Whetehr consent is voluntary is a question of fact that is dependant upon the totality of the circumstances. Schneckloth, 412 U.S. at 227.); United States V. Santaigo, 428 F.3d 699, 704 (7th Cir. 2005)(Factors that are considered whether consent was voluntary include; (1) the person's age, intelligence, and education; (2) whether he was advised of his constitutional rights; (3) how long was he detained before he gave consent: (4) whether consent was giving immidiately, or was prompted by repeated requests by authorities; (5) whether physical coercion was used; and (6) whether the individual was in police custody when he gave consent.

In the case at bar, there are factors that wiegh in favor of there being an involuntary consent.

6

The factors that are relevant to an involuntary consent are as
follow; (1) the FBI with a show of force entered the apartment of
movant's ex-grilfriend to arrest him im the early moriing hours. (2)
movant was in physical custody of the agents and the atomsphere was
coercive (3) Movant was not advised at any time of his constitutional
rights before being asked for consent (4)The agents that took him
into custody asked for consent in repeated times and he was not informed
that he could refuse to consent to the search (5) movant was under
duress and felt that he could not refuse to decline to consent. All
these factors weight heavly in favor of the evidence being suppresed
had counsel filed the motion to suppress evidence. Counsel's performance
cannot be nothing less then defiecient an it cannot be argued that it
did not prejudice the defendant.

Movant submits that counsel was ineffective and provide assistance
that was deficient. Counsel's omission to not file a Fourth Amendment
motion to suppress evidence was ineffective. See Kimmelmon V. Morri-
son, 477 U.S. 365, 383, 106 S.Ct. 2574, 92 L.Ed. 2d 305 (1986);
Owens V. United States, 387 F.3d 607 (7th Cir. 2004)(counsel provided
ineffective assistance of counsel when he did not file a Fourth Amend-
ment motion to suppress evidence); Duarte V. United States, 81 F.3d
75 (7th Cir. 1996)( trail counsel's failure to file a motion to
suppress evidence where defendant advised counsel he did not consent
to the search and, had collaborating evidence could constitute in-
effective assistance of counsel); United States V. Easter, 539 F.2d
663 (6th Cir. 1976) (trail counsel's failure to file a motion to
suppress illegally seized evidence without a warrant was ineffective).

Movant submits tot his Cout that his consent was not voluntary as
required by the Fourth Amendment's prohibition against warrantless
searches.

7

When counsel failed to file the Fourth Amendment motion to suppress evidence that was discovered in movant's vehicle after a warrantless search, counsel's actions were deficient and caused prejudice to his client. And even though movant signed a consent to search that consent was not voluntary nor intelligently made being it was made while movant was under duress. All evidence should be suppressed as being the "fruits of the poisonous tree". Won Sun V. United States, 371 U.S. 471 (1963).

Movant shared the events that took place and counsel still failed to file the Fourth Amendment motion to suppress. Counsel was ineffective and fails the tests set out in Strickland V. Washington. This Court should grant movant's motion to vacate the conviction and sentence and movant should be permitted to file a motion to suppress evidence under his Fourth Amendment rights to be free from warrantless searches.

C.

Movant asserts that statements he made prior to being Mirandized and statements he made after being Mirandized and having specifically requested a lawyer should have been suppressed. Counsel's failure to file a motion to suppresse these statements was ineffective assistance of counsel. These statements that movant made to the authorities were used to link him to the vehicle that was searched and also to the keys to the vehicle.

Movant submits that his Miranda rights  were violated,. See Miranda V. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed 2d 694 (1966)( The United States Supreme Court held that the admisability in evidence of any statements given during custodial interrogation of a suspect depended on whether the police provided the suspect with four specific warnings); Dickerson V. United States, 530 U.S. 428, 147 L.Ed 2d05 (2000)( reaffirming as governing admissibility, in federal and state courts, of statements made during custodial interrogation).

8

The Goverment, in its response claims that movant was not prejud-
iced by the statements that he made to the FBi without being first
advised of his Miranda rights. Movant, asserts that the Goverment is
wrong when it claims that those statements did not cause him any pre-
judice. Movant asserts that the statements that he made to the agents
prior to being given his Miranda rights, were used agaisnt him in the
manner that the statements linked him to the car that was searched
where the agents found evidence that was used to charge him with
additional charges. Movant again made incriminating statements that
it was his voice and that of Juan Corral, his co-defendant. The state-
ment that movant made was that used by the magaistrate to find that
there was probable cause that he had conspired with Juan Corral. Finaly,
the last inciminating statement given to the agents was the location
to the car keys. This statement was given to the agents after movant
had reefused to waive his Miranda rights and to answer anymore of
their questios and having requested a lawyer. Therefore, the Goverment
is wrong when they claim that these incriminating statements caused
movant no prejudice.  See (Exhibits (2), (3) and (4)

    Interrogation is defined as "any words or actions on the part of
thepolice (other than those normally attendant to arrest and questioning)
that the police should know are reasonably likely to elicit an incrim-
imating response from the suspect." Rhode Island V. Innis, 466 U.S.
291, 301, 100 S.Ct. 1682, 64 L.Ed 2d 297 (1980)(quotations omitted);
cf. United States V. Mobley, 40 F. 3d 688, 690-91 (4th Cir.1994)(
before executing a search warrant, officers engaged in interrogation
by asking suspect if there were any weapons or other items in the
house). Whether preceded by request to search or not, an inquiry about
location meets definition of interrogation.

As in this case, when the agents asked movant if he owned the car that was searched, questioned him about the phone call that was taken of the wire-tap and questioning him about the location of the keys to the car meet the difinition of interrogation which should have not been asked absent movant being advised of his Miranda rights or of any waiver to that consitutional right. Counsel's failure to file a motion to suppress statements was defiecient performance by counsel and these errors and omission prejudiced movant. Movant should be permitted to file a motion to suppress these statements that were made in violation of Miranda V. Arizona and they should be suppressed as the "fruit of the poisonous tree", Wong Sun V. United States, 371 U.S. 471 (1963).

Counsel's actions in not filing the motion to suppress the statements was consitutionally ineffective. See  United States V. Davenport, 986 F.2d 1047 )7th Cir. 1993)(trail counsel's failure to file suppressison motion so suppress confession may constitute "cause" under ineffective assistance of counsel for procedural default rule); Martin V Maxey, 98 F.3d 844 )5th Cir. 1996)(failure to file motion to suppress could be grounds for ineffective asstance of counsel claim); Goodwin V. Balkcom, 684 F.2d 794 (11th Cir. 1976)(trail counsel's failure to move to suppress tape recordings that discussed defendant's prior conviction, and failed to object to the admission of the tapes into evidence, was ineffective assistance of counsel).

In the case at bar, counsel failed to file the motion to suppress statements that movant made. This Court should vacate the conviction and sentence and permit movant to file a motion to suppress these statements being that the were prejudicial to him.

D.

Movant asserts that counsel provided ineffective assistance of counsel during the pre-trail stages of the proceedings and at the most critical stages when he instead of filing motions to suppress evidence and statements filed a motion that had no merits. This omisson  which counsel amde was defiecient and not "strategic Decisions" as the Goverment wants to assume. This error, was critical to movants case being that counsel should have known that the arguments that he was raising in the motion to suppresss had no merits in this Court or any other district court.

Counsel filed a motion to suppress evidence based on being that asking for consent to search was a violation of the Miranda rights to defendant and that the evidence recovered had to be suppressed based on these meritless arguments he presented in the court. Movant was not assisted with efective assistacne of counsel with these arguments. Counsel failed to prepare and investigate properly what motions had merit and file those motions not motions that lacked any defense. It is counsel's responsibility to investigate and prepare adequately, such failure to investigate can be and has been held to be reversable error. Jones V. United States, 463 U.S. 745 (1983)(identifing pre-trail as among the critical stages which requires effective assistance of counsel); United States V. Myers, 892 F.2d 642 (7th Cir.1990)( trail counsel's failure to read and review documents disclosed by the Goverment, which contained potantially excupatory materials was in-effective assistance of counsel); Toro V. United States, 940 F.2d 1065 (7th Cir. 1991)(defense counsel's failure to review police reports and laboratory reports constituted ineffective assistance of counsel);

In the case at bar, movant's counsel failed to investigate thoruougly movant's case before preparing and filing the suppression motion.

Counsel's actions deprived movant of a fair representation in District Court, where counsel should have done a thorough review of movant's case. counsel's actions are clearly deficient and were un-professional and the result prejudiced movant. See Strickland V. Wshington, 466 U.S. at 694.

## II.   INEFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING

Counsel provided ineffective assistance when counsel failed to make the objections to the drug quantity and the relevant conduct that was improperly used at movant's sentecning. Movant submits to this court that counsel's errors caused him prejudice with a longer sentence of imprisonment. See Glover V. United States, 531 U.S. 198, 292 (2001)(The standard for prejudice sufficient to be cognizable on a 28 U.S.C. § 2255 motion has been defined by the Supreme Court to be the imposition of any "unwarranted term of imprisonment").

Movant plea guilty to Count Thirteen, for the drugs that were discovered in his car on October 23, 2002 which was an amount of (471.8 grams) of powder cocaine and his sentence should have been based on that amount. Placing him at a level 24, minus the 3-points for acceptance of responisbility leaving hima t a level of 21, with a sentence of 41-51 months imprisonment. Not the level 28 that was used at sentencing. this incorrect level was produced with the 2 kilograms of cocaine that were improperly considered as relevant conduct.

Counsel was ineffective for his failure to contest the imposition of these 2 additional kilograms. Being that these 2 kilograms were not"part of the same course of conduct or common sheme or plan" as the charge  as to which movant was convicted on.

12

The 2 kilograms that were included as relevant conduct were not related to the charge and therefore should have not been included. Apart from the time span of the relevant conduct there is not evidence that this was connected in any way similar to the count on which movant plea guilty too. Counsel was ineffective when he did not challenge this error. Other than those 2 kilograms that were used as relevant conduct there are no other transactions that relate in the offense. See U.S. V. Wilson, F.3d at 722-723 (7th Cir.2007)(the relevant conduct "aggregation" rule, see U.S.S.G. §§ 1B1.3(a)(2), 2D1., is a powerful prosecutoral tool. The offense level for a relatively minor drug crime may be dramatically increased when uncharged drug quantities introduced at sentencing are aggregated); United States V. Ortiz, 431 F.3d at 1041(vacating sentence because relevant  drug conduct not sufficiently related).

In the case at bar, movant's drug quantity was increased based on drug quantity that was not sufficiently related to the charged offense. This improper addition of relevant conduct increased movant's offense level to 28- producing a higher sentence. Counsel provided ineffective assistance of counsel when he did not challenge this increase. Counsel had a professional duty to challenge the relevant conduct that the Goverment used to increase movant's sentence. Nicholson V, United States, 75 F.3d 1137 (7th Cir. 1996)(unprofessional failure to challenge relevant conduct as violative of U.S.S.G. § 1B1.3, prejudiced defendant within the meaning of strickland); United States V. Acklen, 47 F.3d 739, 742-44 (5th Cir. 1995)(counsel's performance was below objective standard required by the Sixth Amendment and defendant was prejudiced where counsel failed to object to the method used to determine amount of drugs involved as relevant conduct).

Movant's sentence should be corrected to be at level 21 for the (471.8 grams) of powder cocaine that was the bases on Count Fourteen to which he pelad guilty. This error that counsel failed to take notice of an object to clearly prejudiced movant wiht a higher sentence.

B.

Counsel was ineffective when he failed to request a downward departure at sentencing for movant's status as a deportable alien and because of movant's health issues. The Goverment responds that this court would have denied a request for a departure had counsel requested one, but when movant was sentenced in 2002, the seventh Circuit was one Circuit that approved downward departures based on a defendant's status of a deportable alien. Movant concedes that currently this circuit does not approve downward departures but given the recent decision in <u>Gall V. United States</u>, 06-7949 (Dec. 10, 2007). The Courts have more discretion at sentencing and the Court is allowed to depart from an imposed sentence.

Movant's other downward departure for his health issues if presented to the Court wiht the proper documentation, this court could have granted a downward departure based on movant's health. Being that he does not recieve the same medical care as if he were not incarcerated. Even as the Goverment responds in its reply that the B.O.P . provides the medical care that prisoners need. Movant submits that while he does receive and has recived medical care for his eye condition he still does not receive the same care as if he were not incarcerated. See (Exihibit 5). had counsel done the proper research and presented it to this Court the Court could have made that decision of either dening or approving a departure for movant's medical condition.

## III.    INEFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL

A. Movant asserts that he was denied eeffective assistance of counsel when counsel failed to file an amended brief and request a likmited remand. Movant informoed counsel that he wanted counsel to file an amended brief to his already p½ending direct appeal when the Blakely and Booker cases were decided by the Supreme Court. The Goverment concedes that movant did in fact write counsel and request that counsel perfect the appeal with the Blakely/Booker issues.

Movant asserts that he was deprived of assistance of appellate counsel when counsel failed to request a limited remand pursuant to this circuit's decision in United States V. Paladino, 401 F.3d 471, 483-84 (7th Cir. 2005). In Paladino, the Seventh Circuit ordered a limited remand to determine whether the District Court, traeting the guidelines as advisory would reimpose the same sentence. ID.

Movant is challenging his then "Mandatory Guideline sentence", asserting that the Court's mandatory application of the Guidelines made his sentence impropoer. In United States V. Booker, the supreme Court held that "the Sixth Amendment as construed in Blakely does apply to the Sentencing Guideline". 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). this is another of counsel's failures to perfect the direct appeal that was pending in the Court of Appeals to request a limited remand and petioner has been prejudiced by counsel's actions. See Roe V. Flores-ortega, 528 U.S. 470, 145 L.Ed.2d 985, 120 S.Ct. 1029 (2000). Also, counsel's failure to perfect movant's direct appeal as right, constitues a violation of movant's Due Process Clause of the Fifth Amendment and Sixth Amendment to the right to effective assistance of counsel. See Evitts V. lucey, 469 U.S. 387 (1985).

Because the Supreme Court rendered the Guidelines advisory, "the
Court's mere mandatory application of the Guidelines-the District Court's
belief that it required to impose a guidelines-Sentence constitues
error." United States V. White, 406 F.3d 827, 835 (7th Cir.2005)(citing
Booker, 125 S.Ct. at 769); United States V. Johnson, 437 F.3d at 678
)7th Cir. 2005) and United States V. Grigg, 442 F.3d 560 (7th Cir.2006).

Counsel's failure to perfect the appeal cannot be argued that was
not ineffetive assistance of counsel. had movant's counsel requested
a limited remand as asked movant could have argued for a sentence out-
side the mandatory guildelines as movant had been sentcned in (2002).
See Castellanos V. United States, 26 F.3d 717 (7th Cir. 1994)("defense
counsel's failure to perfect appeal at defendant's request constituted
ineffective assisatnce of counsel and defendant did not have to show
that he would have provailed on appeal to establish "cause and prejudice".
The court  stated in Castellanos, although the constitution does not
ensure that every defendant recieve the benefit od superior advocacy-
how could it, given that half of all lawyers are beloew average. It does
entitle every defendant to the benefits of an advocay. Gideon V.
Wainwright, 372 U.S. 335, 83 S.Ct. 91 L.Ed 2d 799 (1963); departed
from Betts V. Brady, 316 U.S. 455 (1942), only by including that when
the defendant never had acess to legal assistance, the Court would not
attempt to assess prejudice. So if the laywer fails to show up for trail,
that fact alone establishes a constitutional flaw-even if a judge
belives that a lawyer, having the defendant's best intrest at heart,
would not have cross-examined the prosecution's witnesses and would
have rested without presenting evidence. Just so, we believe, if the
lawyer fails to show up for appeal-which can accur either if the lawyer
failed to initate and appeal or if the lawyer fails to perfect the
appeal. Castellanos V. U.S, 26 F.3d at 719.

Every Court that has confronted this question since <u>Penson</u> has held
that the failure to take an appeal, despite the defendant's request,
is ineffective assistance without the regard to the probability of
success on appeal. See <u>Bonneau V. United States</u>, 961 F.2d 17 (1st Cir.
1992); <u>Williams V. Lockhart</u>, 849 F.2d 1134, 1137 n.3 (5th Cir. 1988).

   Therefore, movant requests that with respect to the failure of
counsel in requesting a limted remand while movant's direct appeal
was pending was ineffective assistance of counsel. Movant was clearly
prejudiced by counsel's failure to amend the brief and request the
limited remand for resentencing. This Court should grant movant's
motion to cacate conviction and sentence.

   B.

   Movant submits to theis Court that counsel's failure to file a
requested petition for writ of certiorari because movant did not pay
him was contrary to Circuit Rule 4: where counsel in a criminal case
whether <u>appointed</u> or <u>retained</u> is responsible for the continued re-
presentation of the client desiring to appeal unless specifically
relieved by the Court of appeals upon a  motion to withdraw for good
cause. See <u>Wilkins V. United States</u>, 441 U.S. 468, 469 (1979); <u>United
States V. Price</u>, 491 F.3d 613 (7th Cir. 2007)(defendant does have a
statutory right based on the Criminal Justice Act, 18 U.S.C. §3006 A).

   As argued above, counsel's actions are contrary to the above cited
cases where counsel did not file a petition for writ of certiorari. In
the case at bar, counsel did not file the petition because movant did
not compensate counsel. Movant should be appointed counsel and allowed
to proceed with the petition for writ of certiorai as he wished counsel
previously to do.

C.

Movant submits that counsel provided ineffective assistance of counsel at sentencing when counsel did not request that movant recieve the 3-levels for his acceptance of responsibilty on Count Thirteen. The Goverment in its response claims that movant did in fact recieve an acceptance of responisbility because count Thirteen for the charge of 18 U.S.C § 922(g)(1), possession of a firearm after having suffered a felony conviction. The claim is becasue movant's §922(g)(1), charge was combined with Count Fourteen which resulted in 63 months for the two combined counts. But Count Thirteen was a starting offense level of 20 and from there the 3-levels for acceptance should have been made, resulting with a27-33 month prison range not the level of 25 that movant recieved for Count Thirteen.

Counsel was deficient when he did not bring this to the Court's attention at sentencing causing movant to be sentenced to a higher level than mandated. This error should be corrected and movant need be set at level 20, minus the 3-points for his acceptance of respon- sibility, totaling a level 17, and a sentence of 27-33 months and not the 63 months that were attributed for this count.

## CONCLUSION

For the foregoing reasons, movant prays that his pro-se motion be granted and respectfully asks for any other relief which this Court my grant him in these proceedings. And respectfully, asks that this Court grant the evidentuary hearing.

Respectfully submitted,

Dated: August 10, 2008

*Miguel Bustante*

Miguel Bustamante # 14995-424 ,
Big Spring Correctional Center
3700 Wright Avenue
Big Spring, Texas 79720


## CERTIFICATE OF SERVICE

I, Miguel Bustamante, the movant, hereby certify that on this
date I did serve (1) original and (2) copies of the foregoing plead-
ing, **MOVANT'S REPLY TO THE GOVERMENT'S RESPONSE TO DEFEDANT'S MOTION
UNDER 28 U.S.C. § 2255 TO VACATE CONVICTION AND SENTENCE**. Via, U.S.
Mail by sealing said documents and placing them into a pre-addressed
envolope, by  certified mail with suffcicient postage affixed thereon,
and by mailing same to:

        Micheal W. Dobbins, U.S. Clerk
        United States District Court
        Northern District of Illinois
        Everett McKinley Dirksen Building
        219 South Dearborn Street, 20th Floor
        Chicago, IL 60604

Also, one (1) true and correct copy to:

        Christina Egan
        Assistant U.S. Attorney
        219 South Deraborn Street, Suite 500
        Chicago, Il 60603

Such service was completed upon placing said mailings into the
BSCC/**Big Spring Correctional Center's**, prison mail depository. I Certify
under penalty of perjury that the foregoing is true and correct. 18
U.S.C. § 1746

Respectfully submitted,

*Miguel Bustante*

Miguel Bustamante, pro-se
Reg. No. 14995-424

EXHIBIT  1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA          )
                                  )
          Plaintiff               )
                                  )
     vs.                          )     No. 02 CR 719
                                  )
MIGUEL BUSTAMANTE                 )     Judge Holderman
                                  )
          Defendant               )

## RESPONSE TO GOVERNMENT'S MOTION TO CONTINUE TRIAL

Now comes Attorney Frederick F. Cohn on behalf of defendant,
Miguel Bustamante, and responds to the government's motion to
continue trial, as follows:

1.  Counsel for defendant, Miguel Bustamante, has no
objection to continuance.  However, if the case is continued, it
is requested that trial commence on June 17, 2003 and not June
16, 2003.  Counsel is presently scheduled to travel to Seattle
for his daughter's graduation from a master's program at Seattle
University.  He is scheduled to leave on the evening of June 12,
2003 and return on June 16, 2003 at about noon.  (See Exhibit 1.)
As counsel told the court, he would, if needed, change his flight
plans.  However, to do so, he would have to obtain reservations
on a different airline and obtain no reimbursement for his
present tickets.  Now that the date of trial may change, it is
requested it commence June 17, 2003 instead of June 16, 2003.

Respectfully submitted,

FREDERICK F. COHN
Attorney for Defendant
601 S. LaSalle Street
Suite 700
Chicago, Illinois  60605
(312) 641-0692

## AFFIDAVIT

FREDERICK F. COHN, being first duly sworn on oath, deposes and states that he has read the above and foregoing Response by him subscribed and that same is true in substance and in fact.

FREDERICK F. COHN

Subscribed and sworn to
before me this 12 day
of May, 2003.

Notary Public

OFFICIAL SEAL
SUSAN BRADFORD
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/08/05

2

# SOUTHWEST AIRLINES®
## TICKETLESS TRAVEL℠
### Non Transferrable. Positive Identification Required
#### BRING A COPY OF THIS ITINERARY TO THE AIRPORT FOR FLIGHT CHECKIN
Receipt and Itinerary as of 03/27/03 12:14PM

Confirmation Number:    8GW7EY    ARC no: 14946400    Received: MICHELLE
Confirmation Date:  03/27/03

Passenger(s):                          Rapid Rewards Member Number:
  COHN/FRED 526-2743080353-3

Itinerary:

| | Flt# | Date | Depart | Arrive |
|---|---|---|---|---|
| CHICAGO-MIDWAY/SEATTLE TACOMA WA | 202 M | 12JUN03 | 06:25PM | 08:50PM |
| SEATTLE TACOMA WA/CHICAGO-MIDWAY | 1060 M | 16JUN03 | 07:00AM | 12:55PM |

EXHIBIT 1

# 05-4798 04-1469 [1]

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
~~EASTERN~~ DIVISION

**FILED**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | JAN 0 8 2004 |
| | ) | MICHAEL W. DOBBINS |
| Plaintiff, | ) | CLERK, U.S. DISTRICT COURT |
| | ) | |
| vs. | ) | No. 02 CR 719-18 |
| | ) | |
| | ) | Chicago, Illinois |
| MIGUEL BUSTAMONTE, | ) | September 8, 2003 |
| | ) | 9:40 o'clock a.m. |
| Defendant. | ) | |

~~DOCKETED~~
~~JAN 0 9 2004~~

TRANSCRIPT OF PROCEEDINGS - Sentencing
BEFORE THE HONORABLE JAMES F. HOLDERMAN

APPEARANCES:

For the Plaintiff:
HON. PATRICK J. FITZGERALD
United States Attorney
219 South Dearborn Street
Chicago, Illinois  60604
(312) 353-4280
BY:  MR. LAWRENCE BEAUMONT

For the Defendant:
FREDERICK F. COHN, LIMITED
BY:  MR. FREDERICK F. COHN
601 South LaSalle Street
Suite 700
Chicago, Illinois  60605
(312) 641-0692

U.S. Probation:
Ms. Sheila Lally

**U.S.C.A.—7th Circuit**
**FILED**

JAN 0 9 2004  **DW**

**GINO J. AGNELLO**
**CLERK**

## Clerk's Copy ^DOC. #_____

COLLEEN M. CONWAY, CSR, CRR
219 South Dearborn Street
Room 2144-A
Chicago, Illinois  60604
(312) 435-5594

1  Clerk of the District Court.

2          Do you understand?

3          MR. COHN:  Your Honor, Your Honor, can I ask something?

4          THE COURT:  Just a second --

5          MR. COHN:  I'm sorry.

6          THE COURT:  -- Mr. Cohn.  If I could just have your

7  client acknowledge this so he will be able to have it clear on

8  the record for his benefit that he was aware that notice of

9  appeal had to be filed, okay?

10         MR. COHN:  Yes, sir.

11         THE COURT:  All right.  Do you understand that?

12         THE DEFENDANT:  Yes, I do, Your Honor.

13         THE COURT:  You must file your notice of appeal within

14  ten days of today's date.

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Okay.  Now, Mr. Cohn, what is it?

17         MR. COHN:  Your Honor, I think, and this is only

18  because I'm leaving town tomorrow, and I always used to like to

19  get the actual judgment order before I file a notice of appeal,

20  I think under 4(c) -- I'm not positive, I'm wondering if Your

21  Honor could check -- the Court is authorized to extend the time

22  for filing a notice of appeal.  I think you can extend it for 30

23  days.

24         And I don't know if you have a book there in front of

25  you.  I didn't have a chance to bring mine over.  And if that's

12

1   possible, I'd ask Your Honor to extend it since I won't be --

2           THE COURT:  Why don't you look up the law, sir.

3           MR. COHN:  Okay.  I will.

4           THE COURT:  I'll hand it down to you.

5           You've known you were leaving town.  We made the

6   adjustments because you were leaving town.

7           MR. COHN:  I know, I understand.

8           THE COURT:  And so we were trying to accommodate you.

9           MR. COHN:  Your Honor, I would --

10          THE COURT:  My court reporter is here.  She's on

11  maternity leave to accommodate you, sir.

12          MR. COHN:  Your Honor --

13          THE COURT:  You can't even look up the law --

14          MR. COHN:  I just --

15          THE COURT:  -- to see if that is permissible?

16          MR. COHN:  I tried to look it up.  I had another matter

17  before Judge --

18          THE COURT:  You were just too busy to look it up?

19          MR. COHN:  It's my fault, yes.

20          THE COURT:  Okay.  Now, I've given you the book.  You

21  may now look it up and bring it to my attention rather than have

22  me sit up here and do your legal work, sir.

23          You will have the Judgment & Commitment Order today,

24  sir.  The Judgment & Commitment Order will be entered today.

25          MR. COHN:  Your Honor, it is Supreme Court Rule 4 --

1     THE COURT:  Why don't you hand me back my book, then,

2  and tell me what it is so I can read it while you're talking to

3  me.  I appreciate it when lawyers come in prepared.

4     MR. COHN:  I understand.

5     THE COURT:  Hand it to my clerk, not my court reporter,

6  sir.

7     MR. COHN:  4 over there.  For good reason shown, the

8  Court can extend it for 30 days.  I'm saying good reason shown,

9  I don't know if I'll have the judgment order in time --

10     THE COURT:  You will have the judgment order today,

11  sir.  My clerk is preparing it now.

12     When will you be returning from your vacation?

13     MR. COHN:  I return from my vacation on the -- the

14  first day in court is the 26th of September.

15     THE COURT:  All right.  So you'll be available to

16  prosecute --

17     MR. COHN:  I'll probably get it filed when I'm away,

18  Your Honor.

19     THE COURT:  Well, the thing that's striking about this,

20  Mr. Cohn, number one, we've made this adjustment for your

21  benefit.  Number two, you know you're going to take an appeal.

22     MR. COHN:  Yes.

23     THE COURT:  So you should actually already have the

24  notice of appeal prepared.  It is only a notice of appeal.

25     You know exactly the decision that you are seeking to

1  appeal, and it just seems to me that you are attempting to

2  extend -- I've now given your client the minimum sentence under

3  the guidelines, and you now are attempting to extend really

4  again for your own benefit.  It just seems to me that you should

5  extend yourself a little bit rather than have everybody else

6  extend on your behalf and in your favor, all right?

7          MR. COHN:  May I explain to Your Honor?

8          THE COURT:  Are you now going to raise your voice

9  toward me?

10          MR. COHN:  No, I didn't mean to raise my voice, Your

11  Honor.

12          THE COURT:  You did.

13          MR. COHN:  I apologize.

14          THE COURT:  Go ahead and explain.

15          MR. COHN:  I have my secretary completing two federal

16  habeas corpuses.  I do a lot of indigent work, and I only have

17  one secretary.  And though they're not due until October 2, both

18  of them, I'd very much like to get them done and filed before I

19  leave.  She's typing them.  And I'm -- it's -- so the problem,

20  it's not having -- giving her something else to submit to type.

21          THE COURT:  A notice of appeal is typically a one-page

22  document --

23          MR. COHN:  Yes, it is, but I've --

24          THE COURT:  -- that you've known ever since the day of

25  the guilty plea that you were going to file.

1        MR. COHN:  Your Honor, I didn't know until Friday

2   afternoon that it was going to be done today.

3        THE COURT:  It was done today for your convenience,

4   because you're going out of town on your vacation that you've

5   scheduled.

6        MR. COHN:  That's correct.

7        THE COURT:  For your convenience.

8        MR. COHN:  That's correct.

9        THE COURT:  And, as I understand it, we had previously

10  scheduled this sentencing for later this month.

11        MR. COHN:  Correct.

12        THE COURT:  But you decided to schedule your vacation

13  through the period which encompassed the date that I'd set for

14  sentencing --

15        MR. COHN:  I didn't know --

16        THE COURT:  -- even though the day of the guilty plea

17  you agreed to the date of sentencing.

18        MR. COHN:  I didn't know I was going to be invited to a

19  wedding in England.

20        THE COURT:  And so to then accommodate your own

21  personal preference as to --

22        MR. COHN:  I withdraw my request.

23        THE COURT:  All right.  Anything else?

24        MR. BEAUMONT:  No, sir.

25        (Proceedings concluded.)

Colleen M. Conway, Official Court Reporter

EXHIBIT 2

1  and drives it to Mexico.  For this he's paid  a fee and some-

2  times receives kilograms of cocaine from the  cartel for his

3  services, which he then sells locally in the  Aurora area.  As

4  also alleged, he was a supplier of cocaine to Juan Corral

5  before Juan Corral had other suppliers, and as is also alleged,

6  now Juan Corral, he supplies Mr. Bustamante.

7        The complaint specifies three calls, one that's on

8  each of three days in June of 2002, in which  Mr. Bustamante and

9  Juan Corral discuss Corral providing Mr. Bustamante with quan-

10  tities of cocaine.  As alleged, they're discussing Corral

11  receiving two kilograms of cocaine, one of which he will

12  provide Mr. Bustamante, and to put this in context, your Honor,

13  a kilogram of cocaine sells wholesale at this level for between

14  $17,000 and $20,000 with a much higher street value.

15        In addition, as alleged in the complaint, Juan

16  Corral, who is again Mr. Bustamante's supplier of cocaine along

17  with other defendants, had supplied Mr. Bustamante with a total

18  of an additional kilogram of cocaine and that was between

19  January and February of 2002.

20        Second, I'd like to direct the Court's attention to

21  the circumstances of his arrest.  Here Mr. Bustamante was

22  arrested in a car which he admitted was his.  Found at the time

23  of his arrest in his car was a half kilogram  of what agents

24  determined to be very pure powder cocaine.  What was also found

25  in his car at the time of his arrest was a . 9 mm. loaded gun.

EXHIBIT   3

8

1   Mexico.  This has -- And I'd like to point out to your Honor

2   that pursuant to investigation done by the agents and

3   intelligence that they received from El Paso,  that show border

4   crossings of cars into Mexico, show that his  car -- This is the

5   car again that he was in at the time of his arrest -- has

6   crossed five times this year into Mexico through the El Paso

7   border in January 4th of 2002, February 15th  of 2002, February

8   16th of 2002, March 5th, 2002 and May 6th, 2002.

9        Again, this demonstrates that he spends a significant

10  amount of time going back and forth into Mexico, which again

11  speaks to risk of flight and also corroborates, it's our

12  position, corroborates the information alleged in the complaint

13  that he operates as a driver of currency for  the cartel from

14  Aurora down to Mexico.

15       Directing your Honor's attention Subsection G.2, the

16  weight of the evidence, here the weight of the evidence against

17  this defendant is strong.  As alleged in the  complaint, the

18  defendant made statements that were recorded  off of a federal

19  wiretap that details his drug-dealing activity.  Mr.

20  Bustamante, at the time of his arrest, made statements

21  admitting that it was his voice on the wiretap speaking to Juan

22  Corral.

23       Additionally, there are three cooperating witnesses

24  who also talk about his drug-dealing activity and role as a

25  transporter of money to Mexico and the cartel, and those are

**EXHIBIT   4**

FD-302a (Rev. 10-6-95)

245D-CG-117840

| Continuation of FD-302 of | Search | , On | 10/23/02 | , Page | 2 |

white Lincoln Navigator, Illinois license number 362 9043, VIN 5LMPU28L7WLJ40236, owned by the subject BUSTAMANTE. A separate consent to search was executed by BUSTAMANTE for the vehicle and the details of that search are contained in a separate FD-302. The location of the keys for the vehicle were shared by BUSTAMANTE as being on the bed in the room where he was arrested. WILLIAMS confirmed that the keys were not hers and that they belonged to BUSTAMANTE.

At the conclusion of the search, WILLIAMS executed the back of the FD-26 noting the termination of the search at 9:48 a.m. on October 23, 2002 and that nothing, with the exception of the Navigator keys, was removed from her custody. The back of the form was witnessed by Special Agent Lori J. Campbell of the Chicago FBI. A copy of the form is attached for reference and the original is maintained in a 1A envelope in the file.

The following reflects approximate times and events at the 1217 Nantucket address in Aurora, Illinois:

| TIME | EVENT |
|------|-------|
| 7:40 a.m. | Location turned over for search. |
| 8:10 a.m. | Owner grants consent to search. |
| 8:18 a.m. | Preliminary survey conducted. |
| 8:20 a.m. | Overview photographs begun. |
| 8:30 a.m. | Overview photographs complete. |
| 9:30 a.m. | Search terminated, exit photos initiated, no evidence collected |
| 9:38 a.m. | Exit photographs of residence complete. Search team exited residence. |

EXHIBIT   5

*U.S.* DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) Ms. Nichols (Ast. Warden) | DATE: 9-13-06 |
|---|---|
| FROM: Miguel Bustamante | REGISTER NO.: 14995-424 |
| WORK ASSIGNMENT: Labor Pool | UNIT: 5103 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

Ms. Nichols, I am writing you this copout for the following
reason. Since about October/2005 I have been complaining
to health services about my eye problems. I have an eye illness
called Keratoconous, this is an eye problem I have had for years.
Because of the Keratoconous my eye vision is very bad it
requires that I wear special contact lenses to be able to see
a 50%. Without any lenses my vision is blurry and I can't see
clearly. Due to this eye problems I had to have a Corneal
transplant on my left eye around September of 2001. I have had
Corneal rejection problems on that eye but with drops I have
used it was controlled. Kudos I have made sick calls to see

( over please )

**(Do not write below this line)**

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

record Copy - File; Copy - Inmate
This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP S148.070 APR 94

the eye doctor that comes once a month here. I have explained to him that I have trouble seeing. That I need to be fitted on my left eye with a contact lens and on my right eye too because the only one I have for my right eye is old and gives me problems seeing. That I was given one but it is not with the correct prescription.

Due to this I can't really see unless it's from close. I can not really watch tv in the T.V. rooms unless I am able to get a seat that is right infront of the T.V. I can't really read because if I spread or write for a long period my eyes get very irritated. The eye doctor says its because of my only contact lens. But I am not being given any new one that is correctly prescribed. As I said, I bring this complaint to you because I do not know where else to turn or who else to complain to.

This problem with my vision is preventing me from doing anything. I am enrolled in some classes and I have to be able to sit up in the front of the class room to see what is being written on the chalkboard or I won't see what is wrote. The other problem is the constant headaches I get from not seeing. I have to strain my only seeing eye.

Ms. Nichols, I hope that you can help me out with this medical problem I face. I am just asking for a contact lens for each eye so I may be able to see. I will never be able to have a 20/20 vision but I do hope that I can be able to see properly and not have to deal with this headaches I have everyday. Thank you and sorry to have to bother you with this matter.

9/13/06

## FCI, FORT DIX, NEW JERSEY

## ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES

### INFORMAL RESOLUTION FORM (BP-8)

NOTE TO INMATE:  You are advised that prior to receiving and filing a Request for Administrative Remedy BP-229 (13) (old BP-9), you MUST attempt to informally resolve your complaint through your Correctional Counselor.  Briefly state ONE complaint below and list what efforts you have made to resolve your complaint informally and state names of staff contacted.

Date Form Issued and Initials of Correctional Counselor _____ 4/3/06

**INMATE'S COMMENTS:**

1.    Complaint: I have a chronic eye condition (Keracotonus) (Both eyes). I need contact lense for my right eye. (last persciption four years old). Due to this, my eye sight is currently very poor.

2.    Efforts made by you to informally resolve:  I have made various sick-calls, and during my last Unit Team, (3/15/2006) Mr. Wlash sent an e-mail to medical staff regarding this situation. (no answer as of date).

3.    Name of staff you contacted: I have mentioned my condition to doctors Magollon and Sulyman  and to Mr. Walsh (case manager.

Date returned to Correctional Counselor: _____

_Miguel Bustamante_ _____    _14995-424_    _4-18-06_
Inmate's Name                           Reg. No.              Date

**CORRECTIONAL COUNSELOR'S COMMENTS:**

Efforts made to informally resolve and staff contacted: _____

_____

_____

Date Informally Resolved: _____    Signature: _____
                    or                                                    Counselor
Date BP 229 (13) Issued: _____    _____
                                                                      Unit Manager

If complaint is NOT informally resolved.  Forward original attached to BP-229 (13) form to the Warden's Secretary.

**DATE** 12-30-05

SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION *(SIGN EACH ENTRY)*

**INSTRUCTIONS:** WRITE NAME, NUMBER, UNIT, AND WORK AT BOTTOM OF PAGE. COMPLETE ITEMS 1 - 6.

**S/ COMPLAINT:** WHAT IS YOUR PROBLEM? DO YOU CURRENTLY HAVE PAIN? ✓ YES ___ NO

I have constant pain on my feet heels but mostly on the left side one that I can't stand or even move. feels like if was fractured, Also need to see eye doctor for new contact lens.

**HISTORY OF MEDICAL PROBLEMS?** ___ DIABETES ___ HYPERTENSION

___ CARDIAC DISEASE ___ IMMUNOCOMPROMISED ___ ASTHMA ___ OTHER

**HISTORY OF MENTAL HEALTH PROBLEMS?** ___ YES ✓ NO

HOW LONG HAVE YOU HAD THIS PROBLEM: DAYS: ✓ MONTHS: ___ YEARS: ___

ARE YOU ON ANY MEDICATION(S)? NO

**SIGNATURE:** Miguel Bustamante 14995-424 **DATE:** 12-30-05

**[DO NOT WRITE BELOW THIS LINE]**

**DATE/TIME** 8 30 05 0630

TO BE COMPLETED BY TRIAGE PERSONNEL

O: V/S (IF INDICATED)   B/P:   P:   R:   PAIN ASSESSMENT: [1 2 3 4 5 6 7 8 9 10]

A:

P:   APPOINTMENT DATE/TIME: 8 30 05 0630   WITH: S. SY. JONOTHAN PRAST...

TRIAGE PERSONNELS SIGNATURE/NAME STAMP:

SEE BACK

| HOSPITAL OR MEDICAL FACILITY F.C.I. FORT DIX | STATUS | DEPT. / SERVICE | RECORDS MAINTAINED AT |
|---|---|---|---|
| SPONSOR'S NAME | SSN/ID NO. | RELATIONSHIP TO SPONSOR | |

**PATIENT'S IDENTIFICATION:** *( For typed or written entries, give: NAME = last, first, middle ID or SSN; Sex, Date of Birth; Rank / Grade)*

BUSTAMANTE, MIGUEL
14995-424
5703
3/18/70

| REGISTRATION NO. | WARD NO. |
|---|---|

FCI FORT DIX
Health Services Unit
Fort Dix, New Jersey 08640

CHRONOLOGICAL RECORD OF MEDICAL CARE
Medical Record
STANDARD FORM 600 (REV. 6-97)
Prescribed by GSA / ICMR
FIRMR (42 CFR) 201-9.202-1